No. 59.—WILLIS WOOD and another, plaintiffs in error, *vs.* MILLY MCGUIRE'S CHILDREN, defendants.

[1.] A party, when put upon the stand as a witness, under the Act of February, 1854, is liable to be cross-examined, as other witnesses now by law are.

[2.] The regular mode of conducting the examination of a witness, is first, to be interrogated by the party introducing him; then to be cross-examined by the other side; and again, to allow the original party the privilege of putting further questions, explanatory of the first, or by way of rebuttal of the cross-examination. If new matter is elicited, opportunity should be extended to the opposite party, of inquiring further, as to that.

[3.] The admissions of a party against his interest, as to property in his possession, or to which he claims title, are competent evidence; and they are good as to those who claim under the declarant, whether he were in actual possession or held the paramount title, at the time they were made, or not.

[4.] A person who takes a conveyance to land and goes into possession, recognizing another as the true owner, holds in subordination to the tenant in fee.

[5.] If one takes a conveyance to land, *bona fide*, believing that he acquires the fee, notice of an outstanding title cannot affect his rights.

[6.] Where both plaintiff and defendant in ejectment, deduce title from a common srouce, it is not necessary for either to go beyond that.

[7.] Where several defendants in ejectment claim separate parcels of land, under distinct titles, and they do not sustain the relationship of landlord and tenant to each other, a joint action cannot be maintained against them;

nor can a joint or several recovery be had, under the laws of this State, either for the premises or *mesne* profits.

[8.] It is error in the Court, at the close of its charge to the Jury, to refuse to listen to a written request, at the instance of Counsel, to further charge the Jury, *regardless of the character of the request.*

Ejectment, in Bibb Superior Court. Tried before Judge HARDEMAN, November Term, 1854.

The following is the bill of exceptions:

Plaintiff introduced as evidence the will of Thomas Rainey, dated 17th September, 1828, and admitted to probate 6th January, 1829, and regularly executed, so as to pass real estate. Item 7th in said will, is as follows: "I will and bequeath to my grand-children, the children of Milly McGuire, their heirs and assignees, forever, lot or parcel of land containing 202½ acres, known by lot No. 68, in the 4th district of Houston County. This is the only clause in said will, affecting the matter in controversy.

Plaintiff then introduced Abner Rainey, who testified: Know the premises in dispute; worth, for rent, $100 to $125 per annum; worth for four years last past, $100 per annum. I would not take it at any price, without insurance, because it is liable to overflow. It has not overflowed so as to lose a crop in four years. Knew Absalom B. McGuire in 1831 or 1832, and from then until he left the country. I saw him in 1831 or 1832, in a shanty, and if he showed the right lines to me, it was in the premises in dispute. The shanty was temporary; I have seen a better where parties stopped only for the night.

There was no clearing—no timber cut; a few brush were cut that looked like children's work; I was there but the one time; went over there to offer to help McGuire build; I never saw McGuire on the land, after that time; he may have left the place next morning, so far as witness knows.

During this interview Absalom B. McGuire did not say anything about the title, or how he claimed the land, or that it

belonged to his children under their grand-father's will—said nothing about it. When he, McGuire, left, he moved up on the Columbus road, and never occupied the land afterwards. The land is mostly in the swamp, only two or three acres out of the swamp—some of it marshy, and all but the two or three acres liable to freshets. I saw Calhoun's hands clearing the land; never saw McGuire or his hands clearing the land.

Copy of *subpœna duces tecum* served upon Calhoun, to produce papers, was then introduced, and is as follows:

*To William Calhoun, Greeting:* We command and formally enjoin you, that laying all other matters aside, and notwithstanding any excuse, you be at our Superior Court to be held at Macon, in the County of Bibb, on the second Monday in November next; and also, that you bring with you and produce, at the time and place aforesaid, the original grant of the State of Georgia to John S. Roberts, to lot of land No. 68, in the 4th district of originally Houston, now Bibb County, dated February 9th, 1822; also, a deed from said Roberts to Samuel Farmer to said lot of land, of same date; also, any deed which said Farmer may have made to said lot, to Thomas Rainey or any other person, and all deeds he may have in his possession or under his control, showing that Thomas Rainey held title to said land, in the years 1828 and 1829, then and there to testify and show all and singular these things or the said grant and deeds doth import, of and concerning a certain action now in our said Court depending, wherein Willis McR. Russell *et al.* respondents, *vs.* Willis Wood and William Johnson, appellants. And this you are not to omit, under the penalty of three hundred dollars.

Witness, the Honorable ABNER P. POWERS, Judge of said Court, this 25th day of September, 1824.

HENRY G. ROSS, Clerk.

Calhoun sworn: Had such deeds as described in the subpœna, but sold the land to Gray and turned over the papers;

thinks they are the papers mentioned in the subpœna; had a full chain down to Rainey, so far as I know. Witness also had the grant. And afterwards, Gray handed me a bundle of papers to be delivered to Stubbs & Hill, saying that he had a suit about the land.

Cross-examined: Can't say that I had a deed among those papers to Rainey; can't say that I ever heard of a deed from any one to said Rainey. When I sold the land to Gray I delivered to him all the papers that I received from McGuire, together with a deed made by Lovick N. McGuire and Abraham B. McGuire, to me, for the land in dispute, all of which I delivered to Benjamin H. Gray, when I sold him the land; and after this suit began, I received a bundle of papers from Gray to deliver to Stubbs & Hill, which I delivered to them without even opening the package or knowing what papers it contained, except that they were papers pertaining to the land now in suit. Had none of these papers when I was served with the subpœna, nor were they in my power, custody or control, nor have I now.

Plaintiff then read the deed from Lovick N. McGuire and Absolom B. McGuire to Calhoun, as follows:

GEORGIA—BIBB COUNTY:

This indenture, made the seventh day of December, in the year of our Lord, one thousand eight hundred and thirty-seven, between William H. Calhoun of the one part, and Frank N. McGuire and Absalom H. McGuire, as parent, of the other part, all of the State and County aforesaid, witnesseth, that the said Frank N. McGuire and Absalom B. McGuire, for and in consideration of the sum of seven hundred dollars, to them in hands paid, at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, hath bargained, granted, and sold, alienated, conveyed and confirmed, and by these presents, do grant, bargain and sell, alien, convey and confirm unto the said William H. Calhoun, his heirs and assigns, all that tract or parcel of land lying and being in the fourth district of Houston, now Bibb County, known

as lot No. 68, and bounded by lots Nos. 47, 67, 85 and 69, which said lot or tract of land was drawn by John S. Roberts, in a land lottery in this State, containing 202½ acres, be they more or less, to have and to hold the said lot or tract of land, with all and singular the rights, members and appurtenances thereof, whatsoever, to the said lot or tract of land, being, belonging or in any way appertaining, with the remainder or remainders, reversion or reversions, rents, issues and profits thereof, to the only proper use and benefit and behalf of him, the said William H. Calhoun, his heirs, executors, administrators and assigns, in fee simple.    And the said Frank N. McGuire and Absalom B. McGuire, as parent, their heirs, executors and administrators, the said bargained lot or tract of land, unto the said William H. Calhoun, his heirs, executors, administrators and assigns, against the said Frank N. McGuire and Absalom B. McGuire, their heirs, executors and administrators, and all and every other person or persons, shall and will warrant and forever defend, by virtue of these presents.

In witness whereof, we have hereunto set our hands and affixed our seals, the day and year above written.    Signed, sealed and delivered in presence of us.

his

LOVICK N. ⋈ McGUIRE, [L.S.]

mark.

ABSALOM B. McGUIRE, Parent, [L.S.]

Test,

  T. M. TOPLEY,

  AXUM S. ALFORD.

Plaintiff then read, under like notice to defendant, a deed from said Wm. H. Calhoun for the premises in dispute, to Wm. H. Gray, dated 14th Dec. 1847, duly executed.    Consideration $1000—clear warrantee deed.

Plaintiff then read, under like notice, to defendants, a bond for titles, executed by Benjamin H. Gray to Wm. Johnson, one of the defendants, a bond conditioned to make warrantee

titles to said land in dispute upon the payment of $1200—said bond dated 17th day of October, 1850.

Plaintiff then read an agreement of Counsel as evidence to the Jury, which agreement is as follows :

We agree, for the purpose of this trial, to receive as evidence the testimony of Absalom Jordan and Wm. Burtelet, on a motion for a new trial.

Also, that Calhoun purchased the land in 1837, then went into possession, and Calhoun and those claiming under him have held possession up to this time, and are now in possession, and that Absalom Jordan would swear, if present, that said lands were not worth more than $700, the amount paid by Calhoun, at the time of the purchase.

LANIER & ANDERSON, Plaintiffs' Atty's.<br>STUBBS & HILL, Defendants' Atty's.

Wm. Johnson sworn, one of the defendants withdrawn by plaintiff: Willis Wood, my co-defendant, claims under me; I purchased from Benj. H. Gray and paid and am to pay $1200 for the land. The sum expressed in the deed is the true amount. I bought in good faith and paid a fair price. I supposed I was buying a good title and did not know of any outstanding title. Gray was in possession at the time, and I supposed I was getting an unincumbered title—large portion of the fence was burnt up—putting the plantation in repair was worth two years' rent. There were twenty to twenty-five acres cleared, worth for rent $2 to $3 per acre. The balance of the land I cleared—worth the rent to clear it—not more than two and a half acres out of the swamp. Willis Wood held and occupied about five acres of the land that was cleared. Wood holds half the lot and I the other half. I sold Wood the West half and I occupy the East half.

Rebuttal: I have heard a rumor in the settlement, some years since, that the McGuires had a claim on the lot, as I supposed, but had not certain knowledge of it.

Defendants' Counsel then offered to ask, and requested the Court to be permitted surrebut so as to explain when it *was* that he ever heard such rumor, and wished to show by the wit-

ness that the plaintiffs knew of the possession by Gray, and had not asserted any title by suit, and had no title upon record and to explain what he meant by rumor. The Court refused Counsel to ask any question to explain the testimony drawn out by plaintiffs on rebuttal; and ruled and determined that the examination of the witnesses was closed. To which ruling defendants then and there, by their Counsel, excepted.

Abner Rainey, sworn: Plaintiffs then offered to prove by the witness that after McGuire had left the premises and in no way exercising acts of ownership over the land, that he, Absalom B. McGuire, admitted that he held the land in dispute for his children.

Defendants objected to the sayings of McGuire, because he was not in possession, and it did not appear that he, Absalom B. McGuire, had either title or possession at the time such admission was made (if any was made). The Court over-ruled the objection and Rainey said:

McGuire admitted to witness, frequently, between the years 1831 and 1837, that the land in dispute belonged to his children, under the will of their grand-father. McGuire was not in possession at the time. To which ruling and decision, defendants then and there excepted. The sayings of McGuire were not given in evidence until all the above and foregoing evidence was given in to the Court and Jury.

Peter M. Curry, sworn: Absalom B. McGuire moved to the land in 1831 or 1832, and remained on it for two or three months in a small cabin.

Testimony of Mrs. Milly McGuire: To Intg. 1st.—I know the plaintiffs but do not know the defendants.

To Intg. 2d. I am the mother of the wives of McDonald and Russell, and also of the other plaintiffs. Absalom B. McGuire, my husband, was the father of the same. Their grand-father on mother's side was named Thomas Rainey. They are the children of Milly McGuire, and are as follows: Frank N. McGuire, aged about thirty-eight; Mary Elizabeth McGuire, aged about thirty-two years old; Ona F. McGuire, about twenty-nine years old; Jemima K. McGuire, about twenty-six

years old; Daniel J. McGuire, about twenty-four years old; Jacob R. McGuire, about twenty-two years old; Rebecca A. W. Russell, about nineteen years old; Sarah Ann McGuire, about fourteen years old; Judith H. McGuire, about eleven years old, all of whom are yet living. None dead, leaving children. Ona F. McGuire was married to George M. McDonald the fifteenth day of July, Eighteen Hundred and Forty-five, and Rebecca A. W. McGuire was married to Willis M. K. Russel the ninth June, 1850.

To Intg. 3d: That Thomas Rainey was the grand-father of said children, and he lived in the year 1827 or 1828 about one mile from Lawrenceville, in Gwinnett County, Georgia. He is not now living. He died about the sixteenth November, 1828, at his residence, one mile from Lawrenceville, in Gwinnett County, Georgia. Milly McGuire is the daughter of Thomas Rainey. Milly McGuire is my name; I am Thomas Rainey's daughter, to the best of my knowledge.

To the 4th: In Eighteen Hundred and Twenty-seven and Twenty-eight, I lived in the County of Walton, Georgia. I have resided in Bibb County, Georgia, since that time until I moved to this, Thomas County.

To the 5th: I did live in Bibb County, Georgia—moved there some time in the year 1829, and lived about ten miles from Macon in a Westerly direction, on the road leading from Macon to Montpelier Springs. The land I resided on was joined by a Mr. Asby and Mr. McManus; Absalom B. McGuire was my husband. He is not now living. He was the father of the plaintiffs. Some time in the year Eighteen Hundred and Twenty-six, my husband was possessed of the control of some land in Bibb County, Georgia, in right of plaintiffs as his children, and held the title in right of said children about twelve years. He had not, before that time, the control of said land for any other person. I cannot tell the number of the lot, nor the district in which it lay; it was in Bibb County, Ga.; said land lies immediately on the Tobesofkee Creek. It was joined by Sampson Barefield's land, Wm. Scott's land and Thomas Howard's land.

To the 6th. My husband was named Absalom B. McGuire, and he sold said land to one William C. Calhoun. I cannot state the month, but to the best of my recollection, he sold it some time in the year 1839. I was not present when the sale was made, but I afterwards heard Mr. Calhoun say to Mr. McGuire, that he would come and get title when the children became of age.

To the 7th. Absalom B. McGuire only lived on said land about two months, but held titles, as before stated, about twelve years. He never held said land as his own right.

The 7th. I know nothing more that will benefit the plaintiff, but that Mr. McManus told Mr. Calhoun that the title to said land was in his children, and Mr. Calhoun replied that he would risk it.

her
MILLY ⋈ McGUIRE.
mark.

## CHARGE OF THE COURT:

After argument of Counsel, the Court was requested, by defendants, in writing, to charge the Jury:

If you believe from the evidence, that Calhoun and those under him in the actual possession of the land, cultivating and exercising acts of ownership over it as their own, under deed to the land, were in possession more than seven years, and there was no disability on the plaintiffs, as to minority or other disability, then the plaintiffs were not entitled to recover.

And you will look to the evidence, and see from that, whether the plaintiffs were of full age for more than three years before the commencement of this suit. And if all the plaintiffs had attained twenty-one years, for more than three years before this suit brought, except Daniel J. McGuire, and you will inquire from the evidence, whether he was in *esse* at the time of his grand-father's death; that is, whether he was born at the time of his grand-father's death or born within the usual period of gestation thereafter; and that if not in *esse* at that time, he,

Daniel J. McGuire, is not entitled to recover; and if you believe that defendants and those under whom they claim, have been in such adverse possession, then the defendants are protected by the Statute of Limitations, and you will find for defendants.    Which said request, the Court refused to give, (except so much thereof as relates to Daniel J. McGuire which was given as requested by defendants.)

To the refusal to charge the balance of said charge, the Counsel for the defendant then and there excepted.

The Counsel for defendants requested the Court to charge:

Where a purchaser of lands, without notice of any fraud or defect of title, purchases from one affected with notice, the purchaser will be protected.    Which the Court refused, " alleging that it was not applicable to the case under the evidence."

To which said refusal to charge, the Counsel for defendant then and there excepted.

Defendants' Counsel then requested the Court to charge the Jury—If it is not in proof before you, that Benjamin H. Gray had notice of some fraud or defect in the title, then you must find for defendants.    Which the Court refused, alleging that it was not applicable to this case.    And defendants excepted.

The defendants' Counsel then requested the Court to charge the Jury—If the Jury should believe that defendant, Wood, was never in possession of but one half of the land, and held the same in severalty, then their verdict for the whole premises and *mesne* profits, cannot be found against him.    Which charge the Court refused to give, as not being applicable to the case. To which refusal to charge defendants' Counsel excepted.

The plaintiffs' Counsel requested the Court to charge the Jury—

1st. That if they believe Absalom B. McGuire and Calhoun admitted titles in plaintiffs, such admission makes said McGuire and Calhoun hold subordinately to plaintiffs, and plaintiffs are entitled to recover, as against them and against Gray and defendants, if the latter claim under said Calhoun and McGuire.

2nd. If the Jury believe that Absalom McGuire, Calhoun

and Gray, and the defendants, all took with notice of plaintiffs' title, plaintiffs are entitled to recover.

3d. That if Absalom B. McGuire and Calhoun admitted plaintiffs' title, their possession is plaintiffs' possession; and if Calhoun held thus from 1837 to 1847, plaintiffs have a good Statutory title.

Not given in charge.

4th. That if Daniel J. McGuire, one of the plaintiffs, was born within the usual period of gestation, after the death of the testator, that he is equally entitled, under the will, with the other plaintiffs.

(To this, the 4th request of plaintiffs to charge, defendants took no exception, considering it sound law.)

5th. That if the verdict of the Jury be in favor of the plaintiffs, and Daniel J. McGuire is not of the requisite age to take under the will, there being but four other plaintiffs, they are each entitled to one fourth of the land; it being conceded that Lovick N. McGuire, one of those four heirs, sold his portion, plaintiffs are entitled to recover three fourths of the land.

All of which said charges, as asked for by the plaintiffs, the Court gave as above stated, except the 3d; and to each and all of which, the defendants then and there excepted, except as to the 4th request of plaintiffs, to which no exception is taken.

The Court, after giving in charge to the Jury the request of Counsel as given to them in charge, and the refusal to give other requests in charge, proceeded to charge the Jury as follows :

1st. The Court charges you, that "a party deriving title from another, mediately or immediately, is bound by admissions made against that title by the latter, while the title was in him.

You will inquire, from the evidence, whether Absalom B. McGuire or William H. Calhoun, while in the possession of said land, and exercising acts of ownership, and whilst they or either of them had so claimed title to the land, made any admission that the title to the same was in plaintiffs. If so, the

defendants claiming under them or either of them, are bound by said admissions, if any such was made.

2nd. The Court charges you, that a plaintiff in ejectment, must recover upon the strength of his own title, not upon the weakness of his adversary's title. But the Court charges, that a party deriving a title or pretending to derive a title from a particular fountain, that is an admission by the party, that said fountain is a good title as to such party, deriving or pretending to derive a title therefrom. You will inquire from the evidence, whether the defendants and those through whom they claim, derive their title, or pretend to derive their title to said lot, from and by virtue of the last will and testament of Thomas Rainey, deceased. If so, it is an admission, on their part, that Thomas Rainey had a good title to said land, at the time of his death, and that he has a right to will and bequeath the same, and that the plaintiffs are not bound to go behind the last will and testament of Thomas Rainey, deceased. You will then inquire from the evidence, whether the defendants and those through whom they claim, have a perfect title to said land, as derived from the last will and testament of Thomas Rainey, deceased; if you find that they derive or pretend to derive their title through and by said last will and testament; if so, you will find for defendants. But should you find, from the evidence, that the plaintiffs derived their title to said land from the said last will and testament of Thomas Rainey, deceased, and that they have not parted with their title, and that both parties rely on the bequest to the children of Milly McGuire, then you should find for such of the plaintiffs as are entitled thereto under said will, and who have not parted with their right or title thereto.

It being conceded by both parties that Lovick N. McGuire, one of the legatees under the will of Thomas Rainey, deceased, has parted with his interest in said land, you cannot find in his favor, but you will find against him.

3d. The Statute of Limitations is also relied on for the defendants.

The Court charges seven years adverse possession will gene--

rally bar a right of action. But the Court charges you, that you will inquire from the evidence, whether Absalom B. McGuire or Wm. H. Calhoun, whilst they had possession of said land and claimed title to the same, acknowledge that the title to said land was in plaintiffs, and that if they had knowledge of the same, that the Statute of Limitations did not commence to run against the plaintiffs till the sale of said land to a purchaser without notice of said title; then you will inquire at what time Absalom B. McGuire and Wm. H. Calhoun sold said land to an innocent purchaser without notice if such sale did take place, and from such period the Statute of Limitations commenced to run in favor of defendants only; and if seven years have elapsed since such sale, if any, to the innocent purchaser, without notice, and such purchaser and those claiming under him have been in possession seven years adversely, you will find for the defendants. But should seven years not have elapsed since the sale by a vendor without notice and title of the plaintiff, and an acknowledgement of the same, you will find for plaintiffs, if you believe that plaintiffs have established their title to said land.

4th. It has also been urged by the Counsel for defendants, that a verdict could not be rendered against both defendants if they held in severalty. The Court charges you that several defendants may be joined in an action, when the title of the plaintiffs in respect to all is the same, although the possession is several and not joint, and each of the defendants may be found guilty for the part in his possession, and the plaintiffs have judgment against them severally.

The Court further charges, that no arrangement between the defendants themselves, after action brought, can defeat the right of the plaintiffs to a joint recovery; and in order to protect the defendants from a joint recovery, they must hold in severalty under different titles, and not the one from the other, and that before the commencement of the action; and that the *onus* of proof of several possessions should be made out by defendants.

5th. The Court charges you, that if you should find for the plaintiffs, or any of them, that you must be satisfied that each

plaintiff was born or was in *esse* at the death of the testator, ThomasRainey, dec'd, and as many of the children of Milly McGuire as were in *esse* at the death of the testator, are entitled to recover, if at all, and you will find in favor of such plaintiffs their undivided proportionable share of such land and *mesne* profits, if any, accordingly.   Lovick N. McGuire having sold, you can find and must find against him.   And the Court gave no other or further charge.

The Court, before proceeding to charge the Jury, announced to Counsel on both sides, that if they had any request to make as to charging the Jury, they must make such requests in writing before he proceeded to. charge them.   In obedience to this announcement from the bench, both sides prepared requests in writing, as heretofore set out, which was given or refused, as herein before stated.

After the Court had concluded his charge to the Jury, defendants then asked leave to present other requests, prepared by their Counsel, while his Honor was delivering his charge, and considered by them to be material and important to the rights of defendants.

The Court, then, refused to hear Counsel as to their requests to charge, and the Jury retired to consider of their verdict.

To all of which said rulings, decisions, charges and refusals to charge, defendants' Counsel then and there excepted, and now assign the same for error.

STUBBS & HILL, for plaintiffs in error.

LANIER & ANDERSON; POE, for defendants.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] The first error assigned in this case is, the refusal of the Court to allow the defendants to re-examine the witness, William Johnson.

A preliminary question is raised in the argument of this cause, as to the proper construction of the Act of 1853–'4,

granting to either party in a cause the privilege of a *viva voce* examination of his adversary, in open Court.   It is insisted, that inasmuch as the previous Acts authorizing discoveries at Common Law did not give the right of *cross*-examination, that neither is it conferred by the late Act, which is amendatory to the Acts of 1847 and 1849.   The Act of February, 1854, provides, that "any party, plaintiff or defendant, in any action at Common Law, pending in any Superior, Inferior or Justice's Courts of this State, wishing a discovery from or on the evidence of the adverse party, on the trial of such action, may apply to the Clerk of said Superior, Inferior or the Justices of the Peace, in whose Courts said action may be pending, in case the party whose evidence is desired, reside in the county where said case is pending, for a subpœna, requiring said party to be and appear at said Court, and testify in said action as other witnesses now, by law, are required to do—which subpœna shall be personally served, 30 days before the term of the Court at which he is required to attend.   And in case said party shall fail or refuse to be and appear, and testify in said action, as required, then and in that case, said cause shall be subject to the same continuances as are now allowed, by law, for the absence or non-attendance of other witnesses; and after said continuances are exhausted, said action shall be dismissed, provided it be the plaintiff who refuses to appear and testify as aforesaid; or if the party who fails or refuses to appear as aforesaid be the defendant in said cause, his plea or pleas and answers, if he has filed any, shall be stricken out and judgment given against him by default; or such other order may be taken or had in said cause, as in the discretion of said Court may be just and proper.   And in the event that said parties, plaintiff or defendant, whose evidence or discovery may be required in action pending in either of said Courts, shall or may, either before, at the time or after the commencement of said action, and before the time of giving said testimony, remove or do reside out of said county in which said action is pending, then and in that case interrogatories may be filed, *as is now usual for other witnesses,* under the same rules and regulations as is

now required by law; and in case of refusal to answer the same, or in case they are answered evasively, the same rule or order may and shall be had as herein before provided, in case of failure or refusal to attend and answer where said parties are subpœnaed to attend in case they reside in said county." (*Duncan's Digest*, 6.)

It will be perceived that a *party*, under this Act, when subpœnaed as a witness, is required to attend the Court and "*testify in the action as other witnesses now, by law, are required to do.*" In other words, they are placed upon the same footing, in all respects, as other witnesses. The Statute imposes no restriction—no limitation, upon their testimony or mode of examination. We do not feel at liberty, much less inclined, to do so. It is a beneficial Act, intended to facilitate the ascertainment of truth, the end of all judicial proceedings, and should therefore be liberally construed. To deny the right of cross-examination, is to emasculate the law of half its strength.

[2.] We return, then, to the main point in this exception.

Mr. Johnson, the witness, had been introduced and examined by the plaintiffs, cross-examined by the defendants, and re-examined by the plaintiffs. Upon this re-examination by the plaintiffs, the questions propounded were not confined to matter by way of rebuttal to the cross-examination, nor explanatory of his first examination. He stated, in answer to an inquiry asked of him, a new fact as to the reports in the neighborhood or county, concerning the title to the land in dispute. And the defendant's Counsel proposed to push the investigation further, as to this rumor. As for instance, when he heard it? whether before or after he acquired title? Also, as to the nature and extent of the rumor?

Was the Court right in denying to the party this privilege? Had the second examination by the plaintiffs been confined to what was either explanatory of the first, or in rebuttal of his cross-examination, the examination might have been considered as closed. But the Court having suffered this new matter to be brought out, opportunity should have been extended

to the defendants, to have interrogated the witness further as. to this new matter.

[3.] Were the admissions of Absalom McGuire, made between 1830 and 1837, adverse to the defendant's title, competent testimony?

It is conceded, that if a party in possession of property, makes admissions against his interest, it is good evidence, both as to him and *his privies.* It is denied, however, that McGuire was either in possession of the premises or had the title thereto during that period. For the purpose of letting in this proof, we think that both of these facts may be assumed to be true. A man by the name of Roberts drew this lot of land, No. 68, in what was originally Houston, now Bibb County, and the same was granted to him in 1822. It seems that the title to this lot, after passing through several intermediate conveyances, vested in one Thomas Rainey, who, by his will, made in 1828, and admitted to record in 1829, devised the land to the children of Milly McGuire, his daughter, the mother of the plaintiffs and the wife of Absalom McGuire, under whom the defendants claim. In 1830 or 1831, the McGuire family came from the up-country and located, for a brief space of time, on this land. But being low and swampy, they soon moved out to a contiguous tract, continuing, occasionally, to cut timber off of 68, until sold by McGuire to Calhoun, in 1837.

It was during this interval that the admissions were made by Absalom McGuire, which were sought to be given in evidence; and to the effect, that the land belonged to his children, under and by virtue of his father-in-law's will.

While this kind of occupancy, on the part of Absalom McGuire, may not be deemed sufficient, in law, to constitute adverse possession as against the plaintiffs, still, it may serve and suffice to let in his disclaimer of title, in himself, during this time. But be this as it may, upon the other view of the subject the point is plain. Concede that the title to this land was not in Absalom McGuire, and it clearly was not and never was, still, the defendants claiming under him, and this fact having been fully disclosed before these admissions of McGuire were

offered, the defendants are estopped from denying his title. Seeking to shelter themselves under it, as they confessedly do, they must take it *cum onere:* take it incumbered with all the admissions made by their vendor respecting it, while he held it, and before he conveyed to Calhoun.

[4.] A great many points are raised upon the record, growing out of the several charges given and refused by the Court, touching the Statute of Limitations. Upon a careful examination of the facts, we must say, the case upon the proof, was fairly, not to say favorably, submitted to the Jury for the defendants. The Circuit Court held, and we think, very properly, that it appearing from the face of the deed itself, as well as the testimony of Mrs. McGuire, and from other circumstances, that Calhoun not only *knew* of plaintiffs' title, but recognized its validity, stating that he would risk the deed of the father, who executed the deed as *parent*, and the oldest son, until the other children became of age, when he would have his title perfected—we say, the Court very properly ruled, that such possession could not ripen into a title, under such circumstances; but that Calhoun took and held in subordination to the plaintiffs' title. Instead of claiming the fee and believing, *bona fide*, that he acquired it, by virtue of his purchase, from the father and the oldest child, he both knew and acknowledged the contrary to be true, and that the fee was in the plaintiffs.

[5.] It is insisted, with great apparent earnestness, by Counsel for the plaintiffs in error, that notice to the vendee, of an outstanding title, cannot affect the *bona fides* of his possession. And in general this is true. If A takes possession of land bought of B, believing that he has acquired a fee, notice of an outstanding title cannot affect him, although it turns out to be the true or paramount title. But in the case before us, there is not only *notice* but *recognition ;* and this is the proper distinction, and is fatal to the Statutory title sought to be set up against this recovery.

Calhoun's possession, acquired by a purchase from the two McGuires, continued down to 1847, within *five* years of the

commencement of the suit, and that fact is conclusive against the bar of the Statute. Had the feoffees under Calhoun, Gray and Johnson bought ignorantly, and consequently innocently, viz: without knowledge of the defects in the original purchase by Calhoun, and held for seven years, the thing would have been different, notwithstanding Calhoun bought with knowledge. And so the Court, in substance, instructed the Jury.

[6.] It is not disputed, I believe, that where both parties derive title from the same source, that it is not necessary for either party to have title beyond that. Here, old Mr. Rainey is the *propositus* or starting point of this title, *quoad* these parties, plaintiffs and defendants. It was not incumbent upon the plaintiffs, therefore, to go back beyond him and deduce the chain, link by link, from Roberts, the grantee, to Rainey.

[7.] We approach, now, a new and interesting question. Where the defendants in ejectment claim different parcels of land under distinct titles, and do not sustain the relationship of landlord and tenant to each other, can a joint action be maintained against them, and either a joint or separate recovery be had for the premises, as well as the *mesne* profits? The Court ruled, that this might be done, and the decisions in New York fully sustain the practice. That this might be done at Common Law, so far as the recovery of the possession was concerned, and may still be the doctrine in those States where the Common Law rule has not been changed, is quite likely. In the fictitious form of action adopted from convenience, the title to the premises only was settled; and the real parties then litigated as to the *mesne* profits. Mr. Adams, however, in his standard work on Ejectment, intimates that the rule is different, even in England. (*pp.* 236, 237.)

In this State, *mesne* profits must be recovered in the same suit with the premises; and a subsequent action cannot be brought to recover *mesne* profits. Apart, then, from the inconvenience of complicating the defence of one defendant with that of another, can separate verdicts be rendered against them? We know of no practice to warrant it. In this case,

the verdict was joint for the *mesne* profits as well as the possession of the premises, notwithstanding one of the defendants had only occupied a few acres of the land ; and the relation of landlord and tenant did not exist between them.

His Honor, the presiding Judge, charged that no arrangement could be made between the parties, after suit brought, to prevent a joint judgment.   And this is true.   But the proof shows that Wood bought of Johnson in 1850, whereas the action was not instituted until 1852.   The defendants, therefore, held independently of each other, at the commencement of the suit.   Upon the best reflection we can give this subject, and with a view to the establishment of a proper practice, we feel constrained to over-rule the direction given to this branch of the case.

[8.] We fear, too, we cannot sustain the Court in refusing to listen to the written requests to charge the Jury, at the conclusion of the general charge which he had already given. The Act of the last Legislature imposes this as an imperative duty upon the presiding Judge, and prescribes no particular time when it is to be done.   And as yet, the Judges, in convention, have established no rule upon this subject.   It is doubtful whether it be practicable or politic to do so.   What the requests were does not appear ; the record is silent upon this subject.   It may have been to supply some omission ; and if so, the application should have been complied with.   The bill of exceptions, as it stands, places the Court in the predicament of refusing to listen to any request, regardless of its character.   And to affirm this, would be to repeal the Statute.