Watt vs. Ganahl.

----

JOHN B. WATT, Executor of Alexander Watt, deceased, plaintiff in error, vs. MARIAH ANN GANAHL, defendant in error.

A boundary acquiesced in by co-terminous proprietors and their possession regulated by it for twenty or thirty years, is conclusive upon the parties and those claiming under them.

Watt vs. Ganahl.

Action for Real Estate.   In Effingham Superior Court.
Tried before Judge FLEMING.   April Term, 1861.

The error assigned in this case is on the charge of the
court, which was as follows :—" That, while it was true,
as contended by the plaintiff, that in a contest between
the owners of adjoining lands, in relation to a question of
boundary,  nothing but actual possession of the part of the
premises in dispute would  bar  the right of the plaintiff to
recover all  the  premises covered by his grant, still, if the
jury found that, on the  east of the  bay, there was a plain
line marked out, which had been  known  and recognized as
the true boundary, by both parties, or those under whom they
claimed, for twenty or thirty years, that line would become
the true boundary, and  both parties would  be bound by it,
and entitled to hold and  claim  to it."   " That  this was the
law ; and it made no  difference whether there had been any
actual possession in this case  or not, and that the claim on
the one side, and  acquiescence  on  the  other, to the  line so
marked and recognized, was  based upon  a  mistake, in sup-
posing that said line was the  true original line, and coinci-
dent with the  prolongation  of the line recognized on the
other side of the bay, and the ignorance of both parties that
the  two lines  were  not  identical  and  would  not  meet."
" That this was not  such  a  mistake or  misapprehension as
the Supreme Court had contemplated in the  decision in 16
*Ga.*"

Thus is the charge stated in the  bill  of exceptions; but
the Judge, in certifying to it, appended a note as follows :—

" In signing this certificate, it  is  proper to  state that the
lines marked on both sides of the  bay  were, according to
the testimony, *old* lines, and were  both  recognized as the
*true* lines of the McInfuss tract, by the proprietors of the
adjoining tracts, for twenty or thirty years ; that there was
no conclusive evidence that the line was ever actually run
through the bay.   Under this state of facts, I  charged the
jury, further, that if these lines were made by the original

surveyor, they would be the true lines, although the surveyor may have made a mistake in supposing that these lines, prolonged, would meet; that if the surveyor crossed the bay at some moie convenient point, and in measuring back his offset, either fell short of, or went beyond the line, still, the line he made would be the true line.

"In regard to mistake by the proprietors, I charged the jury, that whilst possession by mistake could not give title, yet, that the mistake must be where the line, not being known, is crossed by accident; that it is a different case where the true line is crossed for the purpose of reaching a plainly marked line, known to and recognized by both parties for thirty years as the true line between them."

For a better understanding of the charge, the evidence, as brought up in the record, is set out as follows:

The plaintiff introduced a chain of title, beginning with a grant to McInfuss from King George III, accompanied with a plat and certificate of survey. It was conceded that he had title to the land covered by the McInfuss grant.

He then introduced *James E. Wilson*, deputy county surveyor, who testified that the McInfuss grant covered the premises in dispute. He had surveyed the land since the last term of the Court, and made the plat exhibited to him, which, to the best of his skill and judgment, was correct. Mr. Marlow, the defendant's agent, was present when he made the survey, and exhibited to him the plats and grants to the McCormick tract and the Edwards' tract, owned and claimed by defendant.

Witness found all the corners of the McInfuss tract but one. There was no dispute about the lines on three sides; they were plain enough. On the western boundary, witness found a plain line; he found the cypress station called for by the original plat, accompanying the grant, and the pine corner on the south-west. He cut into the tree 1¾ inches and found the plain marks—cross and three chops. Had no doubt that it was the original corner of the McInfuss tract. From this corner, running the disputed line according to

the course and bearing of the original plat, found a plain line into the bay; was shown the spot on this line where the original maple station stood. Following the line through the bay, the witness found several trees which he believed to be the original line trees; they are marked on witnesses plat. At the intersection of this line with the eastern boundary line, where there ought to be a pine corner, witness found a pine stump answering the description of the corner in the plat, but the tree had been burned down by fire below the place where the marks would be. To the best of witness' judgment, the line marked and delineated on his plat, is the true original line of the McInfuss survey.

*Thomas R. Hines* testified as follows: "I am familiar with the lines of the McInfuss plat. In 1834 I carried the chain around the western, and part of the southern or disputed, boundary. I once owned the land myself. I knew the cypress station on the western boundary, and the pine corner, marked on Mr. Wilson's plat. I cut timber off of this land twenty-six years ago. They have always been known and recognized as the original land-marks of this tract of land. In 1841 I sold the land to Israel Buil. He claimed the land on the west of the bay, down to the line marked by Mr. Wilson. The old maple station stood on this line. It was inside of defendant's fence. I know the line claimed by defendant on the west of the bay. It is old, and was, for twenty years, recognized by both parties as the line. I always supposed it to be the true line. There was no dispute about it, because no one knew that it was not coincident with the line on the west of the bay. I always supposed it to be the same line, and so did Mr. Shearhouse, who owned the land on the other side of the line; and the mistake was never discovered until defendant commenced clearing up the bay. As soon as the bay was cut down, the mistake appeared, and it was discovered that the lines were not the same, and would not meet. From that time plaintiff claimed the lower line and the defendant the upper one, and this suit was commenced. I have no doubt the error oc-

curred in re-surveying the land.   Instead of running through the bay, the surveyor ran down to the bay on both sides, and called for a straight line through, and having made a mistake in measurement, on the east of the bay, stopped before he was opposite the corner on the other side.   Mr. Shearhouse was the owner of the McCormick and Edwards tracts at the time I owned McInfuss'.   The claim by him to the upper line on the east of the bay, as delineated by Mr. Hughs, and the acquiescence by the owners of McInfuss' were based upon the supposition that the two lines were coincident.   It would not have been recognized if it had been known that they were different lines and would not meet.   There never was any actual occupation of the disputed territory east of the bay until defendant cleared the land, about four or five years ago.   The mistake was then discovered, and this suit commenced.   The recognition of the line, on the east of the bay, was based solely on the idea entertained by both parties that it was the prolongation of the line, from the other side of the bay.   The defendant is now in possession of the disputed part, and was when this suit commenced.   I have no doubt that the lower line delineated on Wilson's survey is the true one."

Defendant offered in evidence a plat and grant to McCormick, bounding the McInfuss land on the south, and a plat and grant for a tract to Edwards, also bounding McInfuss' on the south, and dated in 1821.   Both these plats called for the southern boundary of the McInfuss land.   She also exhibited a chain of title to herself for three tracts of land, and a survey made by John Moore, in 1801, and one by Z. Powers, in 1832.

*W. Hughs* testified as follows:   " I am, by profession, a surveyor.   I have surveyed the premises in dispute, and the plat exhibited is a true delineation of the same, to the best of my skill and judgment.   Plaintiff was present with his titles when the survey was made, as was also Mr. Keefer, the county surveyor.   I commenced running the McCormick tract at the south-eastern corner.   I found the east line and

the north-east corner,—a stake, as described on Keefer's plat, which was made by me with his approval, and certified by him. It was an old corner. I can't say it was the original corner. It is on the upper line, and on the little island in the bay. From this corner we found no line running west. There were some blazed trees west of the corner, which I believe were line trees, but cannot swear to them. I measured off the distance on McInfuss' plat, between the cypress station and corner, and made a corner at the proper distance on the west boundary line of McInfuss, and then ran my line through the two points, so found. From the stake corner in the island to the end of the line west, on the main line, I found no marks or traces of a line, except the two blazed trees already referred to. There is a plain line east of the bay, which is described on my plat, and coincides with the upper line claimed by defendant. It is an old line from the stake corner, to the stake corner on the island in the bay. I found one station tree: I think it an old station—as old, probably, as the corner on the west side, referred to by Mr. Wilson. The pine corner exists on the west side, as stated by the witnesses for plaintiff, and there is a plain line from that corner into the bay, and west of it to a stake, said to be the corner of McCormick tract. I do not believe the pine corner, west of the bay, to be the original corner of McInfuss'; because it is too far from the cypress station, and I think the tree is not large enough to have been made a corner in 1771. From the point where the lower line enters the bay to the eastern boundary, I could find nothing which, to me, indicated a line. I have examined the premises since Mr. Wilson surveyed them. I do not think the marks he refers to are land-marks. I will not swear that they are not: when marks become so old it is almost impossible to identify them."

*William Shearhouse* testified as follows : "I owned the lands covered by McCormick and Edwards' grants ; sold them to defendant; lived on McCormick tract. I know the pine corner and maple station, on west of the bay, on Wilson's line; always considered that the line, and claimed to it. The

upper line, on east bay, I always supposed to be the line. It was considered, both by me and the owners of the McInfuss, as the true line, for twenty years. I claimed to it and exercised acts of ownership,—such as cutting wood and getting timber, as I had occasion. There never was any actual occupation, however, between the disputed lines, until defendant cleared up the land and built the fence. I had no fields there, no fence, no house, dug no mine. I only claimed it, and got wood and timber, as I had occasion. My claim was based on the idea, that it was the same line prolonged through the bay from the pine corner on the west of the bay, through the maple station. I never had any other idea than that the two lines were one and the same. The owners of McInfuss acquiesced, I have no doubt, on the same hypothesis. There was no line south of that, on the east of the bay, to my knowledge. I never intended to claim any land except what my plats covered. I thought that line was the boundary of McInfuss, and claimed to it."

The case was heard in the Supreme Court on the brief of counsel.

WILSON & LESTER, for plaintiff in error.

LAW, BARTOW & LOVEL, for defendant.

LUPMPKIN, C. J.

Was the charge of the Court erroneous? The case referred to, in 16 *Ga. R.*, of *Riley, administratrix, &c., vs. Griffin, et. al., p.* 141, is quoted as controlling this case. We do not think that case strictly applicable. There, the party went into possession of lot No. 3, under the belief that it was lot No. 2. We held that his possession, under *such* a mistake, could not ripen into a statutory title. He never intended to claim title to lot No. 3, and never did.

In this case, owing to the obstruction in running out the line of Mr. McInfuss' survey, the true line was probably not

run. Though there is conflicting evidence upon that point, still, McInfuss claimed to the line actually run by the surveyor. When the surveys were located of McCormick and Edwards, they claimed for their boundary the McInfuss survey; and all parties recognized their line as the true boundary for twenty or thirty years. The original parties never claimed any other. Subsequent purchasers under McInfuss seek to disturb their line, and set up title to what they are pleased to call and consider the true line, since the bay has been cleared.

The Court said, in 16 *Ga. R.*, already cited, page 150, "Suppose the line sworn to was not that marked by the original surveyor, still, if it was agreed on by the co-terminous proprietors, and acquiesced in, and possession to it held for eighteen or twenty years, the parties, and those claiming under them, would be bound by it, no matter when, or by whom, the line was run and chopped."

Shall the present plaintiff be permitted to disturb the defendant's possession? We think not. The parties, after acquiescing for such a length of time in the old line, and purchasing in reference to it, should not be permitted, at this late day, to unsettle it. They would be getting land which they never bought or paid for.

Judgment affirmed.