## GLOVER vs. WRIGHT.

Complaint for land between daughter as plaintiff, and widow of son as defendant, father and son being both dead, and their respective titles to the premises, a small house, being the matter in question.

In 1872 (March), the owner of a tract of five acres, the eastern boundary of which was the land of one Rogers, conveyed to the son, in fulfillment of a previous bargain made in May, 1871, a parcel of said tract, described in the deed as one acre and a quarter, more or less, bounded east and west by land of the vendor, and including a small house then occupied by the son. In 1874 (October), the same vendor conveyed to the father, in fulfillment of a previous bargain made with him in December, 1871, another parcel of the tract, described in the deed as one acre and a quarter, more or less, bounded east by land of the son and west by land of the vendor. This description was erroneous, the true boundaries being the land of Rogers on the east, and the son's land on the west. Shortly before the latter deed was executed, by procurement of the vendor's assignee in bankruptcy, a survey was made of the whole five acres to definitely run off the same into four equal lots, and so adjust dividing lines as to give one house to each lot, there being then on the original tract four houses. At this survey the son assisted as a chain-carrier, and after it was finished, placed a stone to mark the line between his own lot and that of his father, the father as well as himself acquiescing in that line. As it ran west of the son's house, the one now in controversy, it left the house on the father's lot. The son accepted this result without objection, asked and obtained his father's permission to remain in the house temporarily, and from that time until his death, in February, 1880, occupied it as the property of his father, disclaiming title in himself and admitting it in his father. The son's widow remained in the house until this suit was brought against her, in 1886, but without asserting any title to it, so far as appears, until during that year. The father died in 1883, having a few weeks before his death conveyed the lot to his daughter, the present plaintiff. The son's widow claims solely under her deceased husband.

*Held*, that the conventional boundary established on the basis of the survey, the forbearance of the father to take measures to secure anywhere beyond that boundary his due share of the five acre tract, and the relation of landlord and tenant into which the two entered, are controlling elements of the case, and that a due application of the law to the facts in evidence entitles the plaintiff to recover.

November 30, 1888.

Title. Boundaries. Landlord and tenant. New trial. Before Judge RONEY. Richmond superior court. April term, 1888.

Reported in the decision.

J. S. Hook, for plaintiff.

Frank H. Miller and William K. Miller, for defendant.

Bleckley, Chief Justice.

This is one of the clearest cases we have ever had. It appears from the evidence that when the father and the son made their respective purchases in 1871, it was contemplated on the part of the owner of the five acre tract, to divide it into four lots, so as to give one house to each lot, there being then, as we understand from the record, four houses on five acres. The deed executed to the son failed to specify definitely any east and west boundaries, and there was no definition of these boundaries until the survey of 1874 was accomplished. Then the lines were run through the five acre tract, not making parallelograms, but sloping in a way to cause one house to fall within the lines of each lot ; and the line in question between these parties ran west of the house which the son bought and occupied, giving to lot number one, as the plat of that survey exhibits it, this house now in controversy. The son, who was really, according both to his deed and his original contract of purchase, the owner of that house, yielded to this survey, having assisted in making it ; he got lot number two, and he and his father established a conventional boundary, conforming to the line as defined by that survey. If that survey did not define the boundary between them, it is still undefined everywhere except as to the ground on which the house stands. By giving up some of the land on the east margin of his lot, the son got more land on the west margin than he would otherwise have had. The

relation of landlord and tenant was established by mutual agreement, and was never repudiated in the lifetime of the son, he dying five or six years afterwards. Nor do we hear that the widow, who could only take the son's position by reason of remaining in the house as his widow, ever set up openly any title (although she considered, she says, in her own mind, that the house was hers) until 1886. Her occupation must be treated simply as a continuance of that of her former husband, and so regarding it, it would make the possession of the father by his son and the son's widow more than seven years, after the boundary was agreed upon, and section 2388 of this code would have almost a literal application to the case. See also *Riley vs. Griffin*, 16 *Ga.* 142(19) ; *Wood vs. McGuire*, 17 *Ga.* 303 ; *Watt vs. Ganahl*, 34 *Ga.* 290, *Cleveland vs. Treadwell*, 68 *Ga.* 835 ; *Camp vs. Cochrane*, 71 *Ga.* 865. The son and his widow should be regarded as holding possession for the father, being his tenants, the son at will and the widow by sufferance. According to the evidence, the father as well as the son, had paid the purchase money in full before the bankruptcy of the vendor, and though the deed to the father was made after that event, it was done with the consent and approbation of the assignee. At the time of the survey, the father had full equitable ownership of the east lot (that marked number one on the plat), having previously paid all the purchase money. He was entitled to have one-fourth of the five acre tract, and though without the son's consent that fourth could not embrace this house and the ground on which it stood, with such consent it could embrace them. Had the line deflected where the house stood, so as to increase the area of No. 2 at the expense of No. 1, it should have deflected at some other point so as to compensate No. 1 for this loss of area. It follows that if the son yielded the

house, the father yielded a corresponding space elsewhere upon the margin of his lot.

In the charge of the court touching admissions made by the son while in possession, after the survey, reference was made to the question whether he had knowledge of his rights, but no question of that sort is raised by the evidence. There is not the slightest indication in the evidence that he did not know all the facts, and the law too, of the matter; and the rule as announced by this court is, that where ignorance of the law is relied upon, such ignorance must be made to appear; the presumption being that one who makes admissions adverse to his interest knows how they will legally affect his interest. *Marshall vs. Morris,* 16 *Ga.* 375; *Butler vs. Livingston,* 15 *Ga.* 565. The case was tried in the court below upon a somewhat wrong theory, and certainly the verdict was contrary to evidence and to law. It necessarily follows that a new trial ought to be had. See the head-note.

Judgment reversed.