## IVEY *v.* COWART.

1. Where the location of a line between two tracts of land was in dispute, and evidence was introduced to show the contents of certain land lots and fractional lots, and the effect which running the line as claimed by the adverse party would have on such lots and the improvements on some of them, it was admissible in rebuttal to introduce the tax returns of certain of the defendants, while claiming as owners, for the purpose of showing that they returned some of the lots as containing less land than the evidence on their behalf indicated.

2. Where land was bounded by a county line, and processioners ran and marked the line, and subsequently it was in controversy between landowners, it was error to admit evidence that at the time of the processioning one of the parties proposed to one of the adverse side that they, with the processioners, should go south to a place about seven or eight miles distant from the location of the tract of land involved, where the proposing party said there was no dispute about the county line, and run a line from that point, and that both sides should abide by it and agree to make the decision final.

3. Where the location of the line between two counties was uncertain and disputed, and the line between adjoining lands coincided with the county line, which was claimed by both sides to be a straight line, evidence was admissible to show that for a considerable distance south of the place where the line was in dispute owners of land in the two counties, whose lands were bounded by the county line, had built fences up to a certain line and recognized it as being the county line, and had so bounded their possessions for twenty years or more; and that the line run between the lands of the parties by processioners was a continuation of the line so recognized.

4. Acquiescence for seven years by acts or declarations of adjoining landowners will establish a dividing line. But acquiescence of certain landowners, whose lands are bounded by a county line, as to the location of such boundary, will not be binding on other landowners not holding under them, and whose lands touch the county line at another place.

5. In an equitable action seeking to recover land, to enjoin a trespass, and to recover damages against several defendants as trespassers, there was no error in refusing to charge that "if the evidence showed that the title and possession of the defendants was not joint, or failed to show that the acts of trespass complained of them were not committed by them jointly, then there could be no recovery by plaintiff."

6. Under the Civil Code, § 3915, where several trespassers are sued jointly, the plaintiff may recover, against all, damages for the greatest injury done by either. The jury in their verdict may specify the particular damages to be recovered of each, and judgment will then be entered severally. But the defendants are not entitled to require damages to be apportioned by the verdict.

7. In a suit against several persons as trespassers, some of the defendants may be found to be trespassers and a recovery may be had against them,

while some may be found not to be trespassers and a verdict rendered in their favor.

Submitted May 19,—Decided November 13, 1905.

Equitable petition.   Before J. D. Rambo, judge pro hac vice. Early superior court.   December 5, 1905.

J. S. Cowart brought suit against R. F. Ivey, F. P. Ivey, T. J. Ivey, M. E. Livingston, E. E. Ivey, and Mollie Ivey, seeking to recover a strip of land which he claimed formed a part of land lot No. 400 in the sixth district of Early county, to recover damages for a trespass alleged to have been committed by the defendants in cutting timber on it, to enjoin further trespassing, and to recover the land and mesne profits.   On the trial the jury found in favor of the plaintiff, and also that the plaintiff recover of R. F. Ivey and E. E. Ivey $150 as damages.   The court entered judgment that the plaintiff recover of the defendants the premises in dispute, and that he recover of R. F. Ivey and E. E. Ivey $150 "for damages or mesne profits."   Defendants moved for a new trial which was refused, and they excepted.

*W. C. Worrill,* and *W. D. Sheffield,* for plaintiffs in error.
*Arthur G. Powell,* contra.

Lumpkin, J.   1. The parties were in controversy as to the location of the line between lot number 400 in the sixth district of Early county, and lots numbers 381 and 382 in the seventh district of Baker county.   Land lot number 381 was a fractional lot, as was also lot number 380, which lay just east of it.   In seeking to determine where the line between Baker and Early counties ran, evidence was introduced as to the contents of various lots, and what effect as to the settlements upon some of the lots the establishing of the line in one place or another would have.   Thus it was contended that lot number 381 contained fifty acres.   Plaintiff responded by introducing the tax returns of one of the defendants, showing that it had been returned as ten acres.   The returns of this defendant as to other adjacent lots for that year were introduced, and the tax returns of another defendant for a preceding year were also introduced.   Each return was made while the defendant making it claimed the land.   These were admissible and tended to throw some light on the question at issue.   As to the admissibility of tax returns as admissions, see *Tolleson* v. *Posey,* 32 *Ga.* 372; *Lynch* v.

*Lively,* 32 *Ga.* 575; *Smith* v. *Haire,* 58 *Ga.* 446; *Mashburn* v. *Dannenberg Co.,* 117 *Ga.* 567 (18). One of the returns introduced contained lot number 337, which does not appear to have been a contiguous lot. The only possible relevancy of this, so far as we can perceive, was to explain the difference in the quantity of land included in the two returns; and this was no doubt the purpose of its introduction.

2. Evidence was introduced, over objection, that when processioners of Baker county ran the line between the property of the plaintiff and that of M. A. V. Ivey, one of the defendants (who appears to be the defendant called Mollie Ivey in the declaration), R. F. Ivey, another defendant, representing her, was present; that plaintiff proposed to him that they with the processioners should go south to a place about seven or eight miles distant where the line between Baker and Early counties was undisputed and run it from that point, and that both should abide by it and agree to make the decision final; but that R. F. Ivey refused. This ruling was hurtful error. A proposition to begin a survey at a point which the proposer claimed was undisputed, and that the decision based upon the line thus run should be final, which was rejected by the adverse side, was not admissible in behalf of the person making the proposition. The possible injury which may have resulted from this error is made clear by another ground of the motion for new trial, which alleges that counsel for plaintiff commented on this testimony and urged that it showed R. F. Ivey to be unfair and acting in bad faith in his contention as to the line claimed, and that his testimony was therefore unreliable.

3. The line between the property of the plaintiff and that of the defendant coincided with the county line between Baker and Early counties, which both sides treated as being a straight line. Evidence was admitted to show that for a considerable distance south of the place where the line was in dispute owners of land in Baker and Early counties bounded by the county line had built dividing fences up to the line and recognized it as the county line, and had so bounded their possessions for twenty years prior to the trial, and that the line lately run by the processioners was a continuation of the same line. This was objected to on the ground that it was irrelevant and not binding on the defendants. The evidence admitted may not strictly fall within the rule that "Traditionary evi-

dence as to ancient boundaries and landmarks is admissible in evidence, the weight to be determined by the jury according to the source whence it comes." Civil Code, §5185. But where a public boundary, such as a county line, is the dividing line between two lots of land, use and occupancy by other neighboring landowners, whose lands are also bounded by the county line, for more than twenty years up to a certain line as the county line, erecting fences, and treating it as the county line, and the fact that such line coincides with that claimed by one of the parties, is admissible. Tyler's Law of Boundaries, 296 et seq.; Alrich v. Griffith, 66 Ver. 390(8); Taylor v. Fomby, 116 Ala. 621; *Wimbish* v. *State*, 70 *Ga.* 718; *Riley* v. *Griffin*, 16 *Ga.* 142(18); Boardman v. Reed, 6 Peters, 328. This hearsay or traditionary evidence was not conclusive on the defendants as to the location of the county line, but it was admissible, and its weight was to be determined by the jury.

4. It is complained, in the sixth ground of the motion for a new trial, that the court charged as follows: "General reputation in the neighborhood shall be evidence as to ancient landmarks. . . if more than seven years standing, and acquiescence for seven years, by acts or declarations of adjoining landowners, shall establish a dividing line." The entire charge is not sent up, and this seems to be an incomplete extract with some words omitted. Apparently the charge was taken from the Civil Code, §3247, which provides that "General reputation in the neighborhood shall be evidence as to ancient landmarks of more than thirty years standing, and acquiescence for seven years, by acts or declarations of adjoining landowners, shall establish a dividing line." This section is incorporated in the law of processioning. If the presiding judge meant to state that ancient landmarks of more than "seven" years standing were referred to in the section, it was a misquotation. The latter part of the charge also is not clear. Where lots of land are described as being bounded by a line between two counties, acquiescence for seven years by owners of some of the lands thus bounded would not be conclusive as to the true location of the line as against others whose lands touched the line at a different point. It would be for the jury to determine, from all the evidence, where the true line was. If the location of the line was uncertain, and the parties to the controversy, or their predecessors in title, while holding it, had acquiesced by acts or declarations for seven years or more in a

dividing line between their lots, this would establish it as to them. Civil Code of 1895, § 3247; *Riley* v. *Griffin,* 16 *Ga.* 142(19); *Watt* v. *Ganahl,* 34 *Ga.* 290; *Glover* v. *Wright,* 82 *Ga.* 115; *Catoosa Springs Co.* v. *Webb,* 123 *Ga.* 33.

5. It is contended that the presiding judge erred in refusing a request to give in charge the following: "If the evidence showed that the title and possession of defendants was not joint, or failed to show that the acts of trespass complained of them were not committed by them jointly, then there could be no recovery by plaintiff." It has been held by some courts that in an action of ejectment several defendants in possession, although holding separate and distinct titles, may be joined, where the plaintiff's title in relation to all is the same, and they may defend separately, each for the part in his possession. Adams on Ejectment (4th ed.), side p. 237, and note 2; Tyler on Ejectment, 445-6, 580, 581; 15 Cyc. 83; Johnson *v.* Wood, 5 Johns. 278. This court announced a different rule in *Wood* v. *McGuire,* 17 *Ga.* 303(7); and the decision there made has been embodied in the Civil Code, § 5000, in the following language: "When several persons claim several parcels of land under distinct titles, and do not sustain the relation to each other of landlord and tenant, a joint action of ejectment can not be maintained against them, nor can a joint or several recovery be had in such action, either for the premises or mesne profits." The point may be raised by demurrer if the fact appears on the face of the proceedings (*Lewis* v. *Adams,* 61 *Ga.* 559), or by motion for nonsuit if it first appears from the evidence. In the latter event the plaintiff may dismiss as to the improper parties. *Cunningham* v. *Bradley,* 26 *Ga.* 238. And it has been said that where two or more defendants are charged in the plaintiff's declaration with holding possession of the premises in dispute jointly, if it appear on the trial that each of them possesses a parcel of the land not jointly but in severalty, the plaintiff will be entitled to a verdict for one possession only, at his election. Tyler on Ejectment, 580, 581; Jackson *v.* Hazen, 2 Johns. 438.

The present action is neither ejectment nor complaint for land, but an equitable action seeking not only to recover land, but also to enjoin a trespass, and to recover damages for a trespass already committed. The fact that it may seek to recover land and damages, as well as to have equitable relief, does not prevent it from being an

equitable action. *Collinsville Granite Co.* v. *Phillips,* 123 *Ga.* 830. 'No demurrer was filed to it as being without equity, nor was any defense made on the ground of misjoinder of parties, and the case proceeded as such an action, including a prayer for injunction, although in fact none was granted. The common-law rule, that in a joint action all of the plaintiffs must recover or none, does not prevail in equity. In *Bigham* v. *Kistler,* 114 *Ga.* 453, it was said: "It is well settled at law that in a joint action to recover land, if it appears that one of the plaintiffs is not entitled to recover, the suit will fail as to all. . . But even in cases of this character, where equitable defenses are interposed, the common-law rule above referred to will not be applied. *Rumph* v. *Truelove,* 66 *Ga.* 480(2) ; *Milner* v. *Vandivere,* 86 *Ga.* 540, 545-6. Much more would such a rule not be applicable in an action which is purely equitable. . . The common-law rule, that all must recover or none, was never adopted by courts of equity. In such a case a decree will be molded so as to do justice to all the parties. See Pomeroy's Rem. & Rights, §209 et seq." It would seem that in an equitable action against several defendants, the rule would equally apply that a failure to recover against some would not necessarily result in · a failure as to all.

6. Where several trespassers are sued jointly, the plaintiff may recover against all damages for the greatest injury done by either. The jury may in their verdict specify the particular damages to be recovered of each, and judgment will then be entered severally. But the defendants are not entitled to have damages apportioned by the verdict. Some of the defendants may be found to be trespassers and a recovery may be had against them, while some may be found not to be trespassers. Civil Code, §3915; *McCalla* v. *Shaw,* 72 *Ga.* 458; *Hollingsworth* v. *Howard,* 113 *Ga.* 1099; *Hay* v. *Collins,* 118 *Ga.* 248. Of course there can not be a recovery for a trespass against a defendant if he is not connected with it. To recover against defendants as joint trespassers, they must be such.

On the subject of whether in a suit brought against two or more defendants as partners a recovery can be had against one, there has been some diversity in the decisions of this court; but it has been said, that, even in that case, a separate verdict may be had, and if no objection be made until after verdict it comes too late. *Maynard* v. *Ponder,* 75 *Ga.* 684. See also *Waldrop* v. *Wolff,* 114 *Ga.*

610, 617.   The decision in *Swift* v. *Tatner*, 89 *Ga.* 660, 673, does not conflict with the ruling here made.   There an attachment was taken out against several defendants as joint owners of a ship, and it was held: "The plaintiff having failed to prove the joint ownership as alleged, and that being the foundation of liability as to certain of the defendants, and this being an attachment case, the court erred in not granting a new trial for the want of evidence to uphold the joint verdict."   Nor is there anything in the decision of *Brownlee* v. *Abbott*, 108 *Ga.* 761, in conflict with the present ruling. There also a joint verdict was rendered as to several defendants, without evidence to support it as to some of them.

As the case must be tried again, we refrain from expressing any opinion as to the evidence.

*Judgment reversed.   All the Justices concur, except Beck, J., not presiding.*