Marshall, assignee, *vs.* Morris, claimant.

No. 34.—MATTHEW A. MARSHALL, assignee, plaintiff in error, *vs.* RHODA MORRIS, claimant, defendant.

[1.] [2.] As to when secondary evidence is admissible, and as to what is good secondary evidence, in the case of a lost deed.

[3.] *Lowe vs. Morris,* (13 *Ga. R.* 169,) on this same deed, approved.

[4.] Ordinarily, a new trial will not be granted, merely because *irrelevant* testimony has been admitted.

[4.] A marriage settlement is not within the Act of 1818, which prohibits assignments that prefer some creditors to others.

[5.] To charge the Jury that marriage is a valuable consideration, and sufficient to support a deed; and that if the woman is guilty of no fraud, and enters into the settlement without notice of a debt, due from the man to a third person, she will be protected in the property conveyed by the settlement, against that debt, is not an erroneous statement of the law.

[6.] A new trial will not be granted, when it must result in a verdict just like the old one.

[7.] The Statute of 1850, to prevent Judges from giving to the Jury their opinions, as to what facts have been proved or not proved, does not reach the case in which a Judge, in the course of his charge, merely recites such of the facts in evidence, as are wholly undisputed.

Claim, in Crawford Superior Court. Tried before Judge POWERS, March Term, 1854.

This was a claim interposed by Rhoda Morris to certain negroes, levied on as the property of Richard Morris, her former husband, by a *fi. fa.* in favor of James W. Marshall *vs.* said Morris, transferred to Matthew A. Marshall, the plaintiff.

On the trial, the plaintiff introduced the *fi. fa.* transferred as aforesaid, and proved the negroes to have been, since the rendition of the judgment, in the possession of Richard Morris.

The claimant then offered a copy, from the records, of a deed of marriage settlement, made by Richard and Rhoda Morris, in contemplation of marriage; and for the purpose of laying the foundation for such evidence, she introduced, as a witness, Samuel Hall, Esq., who testified, that in 1843 or 1844, a marriage settlement between Richard and Rhoda Morris was in his possession; placed there for the purpose of defending the title of claimant to the same property, against other plain-

tiffs in *fi. fa.*; that the paper, while in his possession, was proven in Court by the witnesses to it, to be the original; that after diligent search, he could not find it, and that the paper had been destroyed or lost.

To the introduction of this copy the plaintiff objected, on the following grounds:

1st. Because, in January, 1838, (at which time the deed was recorded,) there was no Statute authorizing the record of such papers.

2d. That the witness, Hall, was not a subscribing witness to the instrument; and that his testimony did not prove the existence of the original of the copy, now offered; nor does he account for its non-production, if it did exist.

3d. That the instrument offered, created no estate in the claimant.

These objections were over-ruled by the Court, and the copy was admitted. To which decision plaintiff excepted.

The instrument thus given in evidence, was a deed dated Dec. 20th, 1837, between Richard Morris, of the first part, Rhoda Jenkins of the second part, and Matthew A. Marshall (the plaintiff) of the third part, setting forth, that the two first named parties contemplated marriage; that Morris had twelve certain named negroes in his own right, and that Rhoda Jenkins had four named negroes in her own right; and that "in order to secure the said named negroes to the use of the said Rhoda, so that those owned by the said Rhoda, shall not, by reason of the said contemplated marriage, vest in and become the property of the said Richard Morris; and also, that the said described negroes, the property of the said Richard Morris, may be vested in the said party of the third part, for the use herein-after mentioned". The deed went on, in consideration of the marriage, to vest in the said Marshall the whole sixteen negroes, "in trust for said party of the second part, and her heirs forever"; and it was likewise agreed between the parties, "that the said party, of the first part, shall have the use and benefit of the said sixteen slaves, without account, for and during his natural life".

F. H. Murdock then testified for claimant, that he was a subscribing witness to a marriage settlement, executed by Richard and Rhoda Morris, and Matthew A. Marshall, before the marriage of the first named parties, on the same day that all the parties signed it, but he did not read it, nor does he know whether the copy just read, was a copy of it or not.

Claimant then offered in evidence a declaration in a suit of Matthew A. Marshall *vs.* Richard Morris, on which was a judgment of non-suit; and also the declaration subsequently filed of James W. Marshall *vs.* said Morris; and the judgment thereon being the same on which the *fi. fa.* now levied was issued; from which declarations it appeared that the former suit was on a note of the same tenor as the latter.

This testimony was objected to as irrelevant, which objection the Court over-ruled and plaintiff excepted.

The plaintiff proved in rebuttal, by Thomas Andrews, that the negroes, conveyed in the marriage settlement, were the whole estate of Morris.

It was proven that the negroes levied on were the same conveyed in the marriage settlement by Morris, and that the debt on which the *fi. fa.* was founded, was in existence at the time of the execution of said settlement, being a note held by Matthew A. Marshall.

The testimony being concluded, the plaintiff's Counsel requested the Court to charge the Jury, that if the marriage settlement was made subsequent to the giving the note to Marshall, and if it conveyed all the property of Morris, leaving no means in his hands of paying the note, that a presumption of fraud was raised, which if not rebutted, would make the settlement void as to Marshall.

That when there are several parties to a conveyance, it may be fraudulent as to one and not as to another: and that before they can consider Marshall as implicated in the fraud, it must appear that he was the holder of the note at the time he signed the settlement; and furthermore, that he knew. at the time, that the settlement covered the whole of Morris's, property; and also,

that he signed the settlement with a knowledge of its legal con-- sequences, and not in ignorance of them.

The Court charged the Jury, that marriage is a valuable consideration, and sufficient to support a deed; and that if Mrs. Morris was guilty of no fraud, and entered into the contract without notice of plaintiff's debt, she will be protected in the property; and that if Marshall was the owner of the note, at the time he signed the settlement, it was his duty to give notice of it to Mrs. Morris; and having failed to do so, he is precluded from setting up any claim against the property.

The Jury found the property not subject, and plaintiff in *fi. fa.* excepts to the several rulings and charges of the Court as stated.

HUNTER; BAILEY, for plaintiff in error.

S. & R. P. HALL; POE, NISBET & POE, for defendant.

*By the Court.*—BENNING, J. delivering the opinion.

The record copy of the deed, contained in the record book, was properly admitted as evidence.

[1.] The loss of the original, was sufficiently shown by Mr. Hall's testimony. That testimony amounted to more than the rule of Court requires. The rule is, "Whenever a party wishes to introduce the copy of a deed or other instrument between the parties litigant, in evidence, the oath of the party stating his belief of the loss or destruction of the original, and that it is not in his possession, power or custody, shall be a sufficient foundation for the introduction of such secondary evidence". Such testimony as Mr. Hall's was worth more than would have been the *belief of the party*, that the deed had been lost or destroyed. That belief, besides being the belief of the person having the greatest interest to entertain such belief, might have been one founded on any reason; and therefore, founded on a reason not so good as that of a failure to find the deed, "after a diligent search".

[2.] The loss of the original being sufficiently shown, the record copy, itself, was good secondary evidence.

This deed was signed by two witnesses—one of whom signed as a Justice of the Inferior Court. It bore date on the 22d day of December, 1837, and was recorded the 3d of January, 1838.

By the Act of 1827, (*Cobb's Dig.* 172, §3,) this deed is such a one as was admissible to record; indeed, it was admissible to record by the Act of 1819.

By the second section of the Act of 1837—25th December—(*Cobb's Dig.* 175,) it is such a deed, that if recorded within *twelve months* from the passage of that Act, "upon the usual proof of" execution, and then lost or destroyed, *a copy* of it might "be read in evidence, without further proof."

It is true that this deed was not recorded until after the expiration of more than twelve months from the passage of the Act. But then, by the first section of the Act of 1839, (*Cobb's Dig.* 177,) it is declared that this second section of the Act of 1837, shall be "continued of force, without limitation, as to the time of recording the deeds therein mentioned".

This second section of the Act of 1837, thus indefinitely extended by the Act of 1839, allowing "*copies*" to be read as evidence, of course allowed this *record* copy to be read as evidence—the record copy being, indeed, better than any copy taken from itself.

The Act of 1845, "for the admission of certain evidence in cases therein mentioned", has nothing to do with any question made in this case. (*Cobb's Dig.* 179.)

Nor has the Act of 1847, "to require marriage settlements to be recorded". This Act has certainly no operation, upon mere questions of evidence.

The formal objections to the deed being insufficient, was the substantial one sufficient? That was, that the deed conferred no separate estate on Mrs. Morris.

A construction, by this Court, has already been put upon this deed. In *Lowe vs. Morris*, (13 *Ga. R.* 169,) this Court say, "The first question to be settled in this case is, what shall

Marshall, assignee, *vs.* Morris, claimant.

be the proper construction of the deed of marriage settlement entered into between Morris and his wife, *prior* to their marriage. The deed of settlement expressly declares that Morris shall have the use and benefit of the sixteen slaves mentioned in the deed, *without account for and during* his natural life. By the provisions of this deed of marriage settlement, the fee simple title to the negroes was vested in Mrs. Morris, subject to the *life estate* of her husband, Richard Morris, who was to have the use and benefit thereof during his natural life, without account. The *life estate* of Richard Morris, in this property, was therefore *liable for the payment of his debts*".

[3.] According to this view of the deed, Mrs. Morris *did* take a separate estate in the property. And this view of the deed we have seen no reason to disturb.

[4.] The only objection made to the admission, in evidence, of the two declarations was, that they were *irrelevant.* Admit that to be so; still, should a new trial be granted, merely on that account? In common cases, it is to be presumed, after verdict, that irrelevant testimony had no effect upon the Jury, in producing the verdict. There is nothing to show that this is not a common case.

We do not say, however, that this evidence was such as was not material for the claimant. On that point, it is not necessary to express an opinion.

[5.] This deed was not void by the Act of 1818, "to prevent assignments or transfers of property to a portion of creditors, to the exclusion and injury of the other creditors," &c.

That Act does not touch this case. Rhoda Jenkins, at the time when this deed was made, was not a *creditor* of Richard Morris. How, then, could the deed to her, or for her benefit, be one to prefer a creditor? The deed was made, not to secure a creditor in his debt, but to enable the maker of the deed to effect a marriage—was made in consideration of marriage. Such a deed is not within the letter or spirit of the Act of 1818.

Both parts of the charge to the Jury were objected to. The first part is in these words: "that marriage is a valuable con-

sideration, and sufficient to support a deed; and that if Mrs. Morris was guilty of no fraud, and entered into the contract without notice of plaintiff's debt, she will be protected in the property".

The Statute of the 13 *Eliz.* "against fraudulent deeds," &c. (*Sch. Dig.* 214,) is the law which this charge violates, if it violates any.

That Statute is, for general purposes, well condensed by *Prince*, into the following words: "Every conveyance of real or personal estate, by writing or otherwise; and every bond, suit, judgment and execution, that shall be had or made to delay or defraud creditors and others of their debts and other rights, shall be void as against such creditors, &c. and them only. But the Act shall not extend to any conveyance on good consideration and *bona fide* to persons without notice of the fraud".

[5.] The charge is visibly within this Statute. Obviously, it does not offend against this Statute.

The other part of the charge is in these words: "that if Marshall was the owner of the note, at the time he signed the settlement, it was his duty to give notice of it to Mrs. Morris; and having failed to do so, he is precluded from setting up any claim against the property".

The objection to this charge was, to the word "*precluded*". It was insisted, that notwithstanding Marshall might have owned the note when he signed the settlement as trustee for Mrs. Morris, yet, he was not estopped from attacking the settlement, unless he knew that "the settlement covered the whole of Morris's property; and also, knew what would be the legal effect upon his rights, of such an act, on his part, as that of signing, as trustee, the settlement."

But the settlement did *not* "cover", that is, convey Morris's whole property; it left in him a life estate in all that property. This is the fact—the fact apparent upon the face of the settlement, itself, which Marshall signed. And a matter assumed to exist in a case, but which does not exist in it, can-

not be made the ground of an objection to a decision in the case.

And while it may be true, perhaps, as a general principle, that a man must know the legal consequences of his act, that the act may estop him; yet, it is beyond doubt, also true, that every man *shall be presumed* to know the legal consequences of his act. Whether this presumption shall be a *conclusive* one or not, is another question, and one which calls for no decision in this case. Say, for this case, that the presumption is only *prima facie*. Then, if the Court had given the plaintiff the full benefit of it, the charge, in this respect, would have been, if Marshall held the note when he signed the settlement, he was estopped, unless he was ignorant of the law which made estoppel the consequence of such an act: but that until he affirmatively, on his part, showed himself to have been so ignorant of the law, it *was to be presumed* that he was *not* so ignorant of it.

Now, if the charge of the Court had taken this form, the verdict of the Jury, of necessity, would have been the same that it was under the form which the charge did take; for there is nothing in the case going to show that Marshall was ignorant of the law in question.

[6.] A new trial will not be granted, when it must result in a verdict just like the old one.

What is thus said of the *charge*, disposes of the *requests* to charge.

It was also argued, that "the Court erred in telling the Jury what had been proved".

The part of the charge which it was argued did this, is the following: "The note being made payable to Matthew A. Marshall, is presumptive proof that he held the same, at the date of the settlement; also, that he had sued upon the note, and the *fi. fa.* being transferred back to him, all go to show that the note was in his hands at that time."

Does this amount to the expression or the intimation of an opinion, on the part of the Judge, that the particulars recited in this general way, had been proved? (*Cobb's Dig.* 462.)

Marshall, assignee, *vs.* Morris, claimant.

The most that can be said of the charge is, that it *silently as-sumes* the particulars to be true; that it treats them *as undis-puted* facts.   And such they were.   And strictly speaking, to assume a fact as true, is neither to express nor to intimate an opinion, that the fact has been *proved*.   Suppose the Court had said these particulars are true, to my certain knowledge, but they have not been proved to be true ?   Such a statement, however wrong, would not be inconsistent, in itself, nor would it be a violation of the Act aforesaid.

This charge, then, is not within the *words* of the Act of 1850.   And can it be said to be within the meaning—to belong to the mischiefs the Statute was intended to remedy?   The Act could never have been intended to prevent the Court from assuming, as true, for the convenience of charging a Jury, those facts, of which there are many, in almost every case, about which there is no dispute between the parties.   It must have been intended to prevent Judges from expressing or intimating their opinions, as to whether *disputed* facts had been proved.

For the expression or intimation, by the Judge, of his opin-ion, as to whether such facts had been proved or not, might, and probably would, have some effect in shaping the verdict; as the Jury would, it is likely, be influenced more or less by any thing coming from the Court.   But the expression or intima-tion of the Judge's opinion, as to undisputed facts, could not possibly have any effect in shaping the verdict.

Suppose both parties say to the Jury, we admit this and this fact to be true, and the Court, when it comes to charge, merely in the course of the charge, mentions what is thus admitted, is it possible to say, that although the words of the Statute do not reach this act of the Judge, the intention does ; and therefore, a new trial is to be granted ?

[7.] The Statute, we think, does not extend to a case where the Judge, in the course of his charge, merely mentions such facts in the evidence, as are wholly undisputed.