## WASHINGTON COUNTY.

————♦————

NATIONAL EXCHANGE BANK *et al. vs.* REBECCA C. G. WATSON *et als.*

The statement in a deed of its consideration is so far conclusive on the parties to the instrument that it cannot be disproved in order to avoid the deed; for all other purposes it may be modified and explained by parol proof.

Marriage is in law a valuable consideration. In consideration of marriage a man may convey property to his intended wife, and this conveyance, if *bonâ fide* and of a reasonable amount of property, is good against both existing and subsequent creditors.

For an ante-nuptial settlement to be void as fraudulent upon the settlor's creditors, both parties to the settlement must have been cognizant of the intended fraud.

BILL IN EQUITY, to set aside a deed of realty. The facts shown are stated in the opinion of the court.

*Edward H. Hazard, Charles H. Parkhurst & Robert Thompson,* for the complainants, presented the following points of law:

The deed of Elisha Watson to Rebecca C. Gorham, dated March 28, 1873, was fraudulent as to creditors, and is within the provisions of Gen. Stat. R. I. cap. 162; but even if not at first fraudulent, has become so by being concealed by the holder, and kept from record, and not pursued, by which means creditors have been drawn in to lend their money. *Hildreth* v. *Sands,* 2 Johns. Ch. 35; *Perine* v. *Dunn,* 3 Johns. Ch. 508; *Scrivenor* v. *Scrivenor,* 7 B. Mon. 374; *Hildeburn* v. *Brown,* 17 B. Mon. 779, 783; *Sands* v. *Hildreth,* 14 Johns. Rep. 493; *Bank of United States* v. *Hauseman,* 6 Paige, 526.

If there was any proof that the statement in the answer was true, even then the answer does not set up a valuable consideration for the conveyance, as the alleged understanding is not stated to have been in writing, which would be necessary to make the agreement binding, if the agreement for the deed was in consideration of marriage. Gen. Stat. R. I. cap. 193, § 7; *Hayes* v. *Jones,* 2 Pat. & H. 583.

Equity will not lend its aid to sustain a conveyance where the grantees have failed to record their deeds, have asserted no rights under them, and in fact concealed their existence, and by their supineness have given the former owner a false credit, especially at the expense of those who in good faith have advanced money upon the faith of the former ownership, and have been misled by the gross laches of such grantees. *Coates* v. *Gerlach,* 44 Pa. St. 43; *Croft* v. *Adm'r of Townsend,* 3 Des. 223; Kerr on Fraud, 200 *et sq.*

Ante-nuptial settlements made by a settlor deeply in debt, in fact insolvent, and taking a considerable portion of the settlor's property, and not recorded, are void as to creditors. *Croft* v. *Adm'r of Townsend,* 3 Des. 223; *Pierce* v. *Turner,* 5 Cranch, 154; *Magniac* v. *Thompson,* 7 Peters, 348; *Allen* v. *Walt,* 9 Heisk. 242; *White* v. *Bettis & Capps,* 9 Heisk. 645; *Phillips* v. *Meyers,* 82 Ill. 67.

The gift in the nature of a marriage settlement, to be valid against creditors, must be contemporaneous with the marriage.

The deed in question has every element of fraud attached to it. It contains a false statement of the consideration. It is not placed on record. Its existence is kept concealed. The grantor exercises control over it, and conveys a part of the land described in it as his own, and makes improvements upon the land openly, while the fact of the existence of the deed is guardedly kept from the knowledge of his own daughter for four years, though living in the same house with the grantor and his wife. The knowledge of its existence is confined to the sister and the daughters of his wife.

*Nathan F. Dixon, Elisha C. Clarke & Nathan F. Dixon, Jr.,* for respondents.

*Providence, July* 3, 1880. MATTESON, J. This is a bill by the administrator and sundry creditors of Elisha Watson, deceased, against his widow and heirs at law. Its purpose is to set aside a deed from the deceased to the respondent, Rebecca C. G. Watson, made prior to their marriage, and to subject the real estate conveyed by it to the payment of his debts. The deed is dated March 28, 1873, and was recorded April 30, 1877. It recites as its consideration the sum of five thousand dollars, and purports to convey to Rebecca C. Gorham, then the name of Mrs. Watson, a tract of land in Wakefield, South Kingston, containing about eighteen acres, with a dwelling-house upon it, known as the homestead estate of the deceased. The marriage between Mr. Watson and Mrs. Gorham took place April 16, 1873, and his death May 31, 1877. The bill alleges that Mr. Watson did not deliver the deed to Mrs. Gorham, but retained it in his own custody and control till about April 30, 1877, and then delivered it to the town clerk for record; that no valuable consideration was paid for the conveyance, and that the sum of five thousand dollars named in it was not, nor was any part of it, paid; that the complainants never heard of the conveyance till after it had been recorded; that at the time it was made Elisha Watson was heavily indebted to them, and that this indebtedness was continued by renewals till his death, and remains unpaid; that such indebtedness was contracted and continued on the credit of his being the owner of the estate conveyed and of other property, and would not have been contracted or continued had the existence of the deed been known; that at

the time of making the conveyance he was insolvent, and so continued till his death; that the conveyance was made for the purpose of hindering, delaying, and defrauding his creditors, and that the complainants have been hindered, delayed, and defrauded by it, in the collection of their debts and demands.

The answer of Mrs. Watson, the oath to which was waived, denies the allegation in the bill in relation to the non-delivery of the deed, and avers that it was delivered to her immediately after its execution and prior to April 16, 1873, in conformity with a previous arrangement between Mr. Watson and herself; that she, not knowing, nor thinking it was necessary to have it immediately recorded, kept it in her possession, custody, and control, till some time in September, 1876, when she gave it to her husband and requested him to take it to the town clerk for record, and that she believed that it had been delivered to the town clerk and had been then recorded, and did not know to the contrary till after her husband's death. The answer neither admits nor denies that the sum of five thousand dollars was paid as recited in the deed, but avers that Mr. Watson did receive a good and valuable consideration for the conveyance before their marriage, to wit, her promise of marriage ; that at the time of the execution and delivery to her of the deed in question, and at the time of their marriage, she had no knowledge of the pecuniary circumstances of the deceased except from his own statements and common report; that he represented himself as in easy circumstances and as abundantly able to make the conveyance in question, and that he was reputed in the community to be a man of property ; that she never heard from him, or any one, that he was indebted or in embarrassed circumstances, and that she has no knowledge of the complainants' claims or how they were contracted. The answer denies that the conveyance was made with intent to hinder, delay, or defraud creditors, or with any dishonest intent.

None of the other respondents have answered the bill, which has been taken *pro confesso* against them.

We see no reason to doubt, upon the testimony, that the deed was delivered to Mrs. Watson as alleged in her answer, or that the actual consideration for it was the contemplated marriage,

instead of the sum of five thousand dollars, as expressed in it. The question, therefore, presents itself, whether it was competent for Mrs. Watson to aver and prove a different consideration from that set forth in the deed. Although there has been great diversity of opinion and decision in relation to the conclusiveness of the statement of the consideration in a deed upon the parties to it, it may now be regarded as the settled doctrine in this country, in nearly all the States, that the consideration stated is conclusive only to the extent that it cannot be disproved for the purpose of defeating the ·conveyance, and that for all other purposes it is subject to be modified and varied by parol proof. In a case like the present, where a deed is assailed by creditors as fraudulent, a person claiming under it may support it by proving any valuable consideration, though different from that expressed. Thus in *Bullard* v. *Briggs*, 7 Pick. 533, a husband mortgaged his land, and in consideration of his wife's releasing her right of dower in the mortgage, conveyed the equity of redemption to a stranger for the benefit of the wife, but by a deed containing no declaration of the trust, and reciting as a consideration a sum of money paid by the grantee; it was held as against the husband's creditors, not only that the release of the right of dower was a valid consideration, but that parol evidence was admissible to show it to have been the true consideration. So in *Banks* v. *Brown*, 2 Hill Ch. 558, a deed of land by a husband to the use of his wife, purported to be in consideration of love and affection. In a proceeding by creditors to subject the land to payment of their debts, on the ground that the deed was fraudulent as against them, parol evidence was held admissible to show that the true consideration of the deed to the use of the wife was a conveyance by her made after the deed to her use, but in contemplation of it, of land and slaves of her separate estate. So also in *Gale* v. *Williamson*, 8 M. & W. 404, a father by deed assigned to his son, " in consideration of natural love and affection," his dwelling-house and all his personal estate. In an action by the son against the sheriff for levying on goods which were part of the personal estate on a *fieri facias* against the father, it was held competent for the plaintiff to prove that by bond bearing the same date with the assignment, he bound himself to main-

tain his father's wife and children. In all such cases the issue is, Did the grantor intend to commit a fraud? It does not follow, necessarily, because the consideration is untruly stated that the deed is fraudulent, for the motive which induced the untrue statement may have had no reference to creditors. To permit creditors, then, to urge the fact that a different consideration from the real is stated, as evidence of fraud, and not to permit the person claiming under the deed to rebut such evidence by proving the real consideration, would, manifestly, often work great injustice. We think, therefore, that it was competent for Mrs. Watson, in support of the deed, to aver and prove that the real consideration for it was the contemplated marriage, notwithstanding the statement in the deed that it was in consideration of the sum of five thousand dollars.

Marriage is deemed in law a valuable consideration. A conveyance, therefore, in consideration of marriage, stands upon a different footing from a voluntary conveyance. All the authorities agree to this extent, at least, that a man, though indebted, may settle a portion of his property on his intended wife, and that, in the absence of fraud, the settlement, if no more than a reasonable provision for the wife, will be upheld against existing as well as subsequent creditors. *Campion* v. *Cotton*, 17 Ves. Jun. 264, 271, 272; *Armfield* v. *Armfield*, Freeman (Miss.), 311, 316; *Croft* v. *Arthur*, 3 Des. 223, 232; *Buckner* v. *Smyth*, 4 Des. 371, 372; *Davidson* v. *Graves*, Riley Eq. 232, 235–238; *Magniac* v. *Thompson*, 7 Peters, 348, 393; *Marshall* v. *Morris*, 16 Ga. 368, 373, 374; *Smith* v. *Allen*, 5 Allen, 454, 458; *Bonser* v. *Miller*, 5 Oregon, 110, 112.

In determining whether or not the settlement was made in good faith, the value of the property conveyed, the amount of the settlor's debts, and the value of his remaining property as compared therewith, would, of course, be important considerations. A presumption of fraud, more or less conclusive, would arise in proportion as the property conveyed was, or was not, in excess of a reasonable provision, and as the settlor's remaining property was sufficient, or insufficient, for the payment of his debts. The value of the estate conveyed to Mrs. Gorham, as shown by the assessment for taxes, it was admitted at the hearing, was seven

thousand dollars. This, it cannot be said, was in itself an excessive provision. The value of the remaining real estate of Mr. Watson, as given in the assessment for taxes, was eleven thousand dollars, and as estimated by various witnesses from eleven to fifteen thousand dollars. The testimony does not enable us to determine the amount of Mr. Watson's personal estate at the date of the conveyance to Mrs. Gorham, viz., March 28, 1873. His personal estate at his decease, deducting therefrom a mortgage given to him by one Charles H. Hazard, as security for indorsing the notes of the latter, amounted to five thousand dollars. Whether he was possessed of this at the date in question, or whether it was wholly or in part acquired subsequently, does not appear. It was also admitted at the hearing, that subsequently to the date in question Mr. Watson had lost by his subscription to the capital stock of the Narragansett Pier Railroad Company seventeen hundred and twenty-five dollars, and by his indorsements for Charles H. Hazard four thousand six hundred and sixty-six dollars and sixty-six cents. Whether or not these losses had been paid by him out of his personal estate, or by contracting other obligations, does not appear. Nor does the testimony enable us to ascertain with sufficient certainty the amount of his indebtedness at the date in question, so that we can say that his property, exclusive of the homestead estate, was not sufficient for the payment of his debts. We do not feel justified in this state of the evidence in finding that Mr. Watson was guilty of any fraudulent intent in making the deed in question. But if we assume that he was so guilty, the testimony does not show that Mrs. Watson participated in, or was cognizant of, any such intent, and unless this was the fact, the conveyance to her is valid and must be sustained. In *Magniac* v. *Thompson*, 7 Peters, 348, 393, Judge Story says: " Nothing can be clearer, both upon principle and authority, than the doctrine that to make an antenuptial settlement void as a fraud upon creditors, it is necessary that both parties should concur in or have cognizance of the intended fraud. If the settlor alone intended a fraud, and the other party have no notice of it, but is innocent of it, she is not, and cannot be, affected by it." And see also *Smith* v. *Allen*, 5 Allen, 454; *Bonser* v. *Miller*, 5 Oregon, 110, 112. It does not appear that

Mrs. Watson knew, or had any reason to believe, that Mr. Watson was insolvent, or indebted even, or that she had any knowledge of his pecuniary condition, except that which she admits in her answer, that he told her he was in easy circumstances and abundantly able to make the conveyance, and that he was regarded in the community as a man of property.

The counsel for the complainants refers to certain facts as evidence of fraud, which, if unexplained and connected with other facts, might be significant, but which by themselves do not seem to us sufficient to establish fraud.   1. To the fact that the consideration stated is untrue.   The statement of a different consideration from the true one, in a deed, is of such frequent occurrence when there is no claim of any fraudulent intent, that it is not entitled to much importance.   2. To the fact that the deed was not recorded.   There is nothing to show that Mrs. Watson's explanation of the delay on her part to record the deed was untrue. Mr. Watson's request to the town clerk not to record it, coupled with his statement of the reason for not recording it, that it was a family matter, and taken in connection with the fact that its existence was " guardedly " concealed from his daughter, is explainable upon the idea that he did not wish his children to know of the conveyance.   3. To the fact that the grantor made repairs and improvements on the estate conveyed.   It is not surprising that Mr. Watson, continuing to occupy the estate jointly with his wife, should have expended four or five hundred dollars in repairs and improvements, which rendered its occupation more comfortable and convenient.   4. To the fact, as claimed, that a portion of the land was conveyed by Mr. Watson to one Benjamin F. Robinson, in March, 1877, as if he was the owner of it, and that Mrs. Watson joined in the deed, releasing her right of dower.   It appears that Mr. Watson agreed to convey this land, or a portion of it, to Mr. Robinson in 1872, and that a house had been built on it prior to the conveyance of it in 1877.   It is not clear that the description of the homestead estate in the deed to Mrs. Gorham covers the land conveyed to Robinson.   Mr. Robinson himself, in testifying in relation to the matter, does not state positively that it does, but merely that it does to the best of his knowledge.   If he is unable to say positively that it was

a part of the land described in the deed to Mrs. Gorham, it would not be strange if Mrs. Watson should have signed the deed to him on the supposition that it was not a part of her estate, especially if told by Mr. Watson that it was a lot which he had agreed to convey to Mr. Robinson in 1872.

The complainants contend that the deed ought to be set aside, because, even if not originally fraudulent, the delay to record it operated as a fraud upon the creditors of Mr. Watson, since it enabled him to obtain a credit which would not have been given, except on the faith of his ownership of the estate in question.   If the deed had been withheld from the record by Mrs. Watson, or with her knowledge and acquiescence, for the purpose of enabling Mr. Watson to obtain a credit to which he was not entitled, and thereby to defraud, there would be force in the suggestion, but the testimony discloses no such purpose.

Our conclusion is, that the bill be dismissed.

*Decree accordingly.*