Barron *vs.* Burney *et al.*

BENJAMIN F. BARRON, plaintiff in error, *vs.* JOHN W. BUR-
NEY, *et al.*, executors *de son tort*, etc., defendants in error.

1. The heirs at law of an estate may, as between themselves, divide the
   estate by agreement, without administration; but, as against creditors,
   if they convert to their own use the personal effects, they are execu-
   tors *de son tort*, and are liable as such.
2. Although, under the Code, executors *de son tort* can not get credit for
   any debt they may have paid; yet, if, in good faith, they have furnished
   the widow her year's support, according to her circumstances in life,
   and this has exhausted the effects they have used, they are not liable,
   except for the excess.  The claim of the widow is not a debt, but a
   special provision allowed by law, in preference to any liens or debts
   held by creditors.
3. There being, in this case, no evidence of the actual payment, by these
   heirs, of the widow's year's support, we reverse the judgment of the
   Court below in refusing to grant a new trial.

Assumpsit.   Distribution of estates.   Tried before Judge
FOSTER.   Jasper Superior Court.   October Term, 1867.

On the 2nd of March, 1861, John W. Burney, Jr., as
principal, and John W. Burney, Sr., as security, made and
delivered to said Barron their promissory note for $3,630 00,
due 10th of November, 1861.   John W. Burney, Sr., died
in December, 1864, leaving as heirs and distributees of his
estate John W. Burney, Jr., James S., William, J. J. H., C.
C., Lucy and C. R. Burney, and Mary B. and T. M. Swan-
son.   On the 22d of February, 1865, these heirs and distribu-
tees, because there were certain matters of controversy touch-
ing the settlement and distribution of the estate, entered into
a written agreement substantially as follows :  There was to
be no administration.  They were to submit to the arbitrament
of certain arbitrators, therein named, all questions of law or
fact which might arise in determining their several interests.
These arbitrators were to determine what amount of property,
or money, or both, should be allowed the widow of John W.
Burney, Sr., for her year's support,  and  what furniture she
was entitled to under section 2531 of the Code of Georgia,
and also what was her entire interest in said estate, both real
and personal, taking into account the advancements which

were made to the children of said deceased while living, and to determine all other questions which might arise touching the same.   After ascertaining and setting apart for the widow so much of the estate as they should think her entitled to, then the arbitrators were to make those who had had no advancements, equal to those who had had advancements, and distribute the residue, if any, equally between the parties, (except the widow) according to law, as the arbitrators should think proper.

The arbitrators were to consider a claim of F. M. Swanson for $4,000 00, and one of John W. Burney, Jr. for $3,000 00 against the estate, and determine whether said claims should be paid in Confederate currency or property, and, if in property, at what valuation.   The house and lot where the widow lived, a store-house in Monticello, a lot at the Springs, and all the other real estate out of Jasper county, and three slaves, (named,) were not to be covered by this arrangement. All forms were to be waived, and the award was to be final.

As to the balance of the property, to-wit: that not covered by the arbitration, they authorized John W. Burney, Jr. to sell it publicly or privately, and to settle and pay the debts of deceased, and generally to close up the business of deceased, and each bound himself to John W., Jr. to pay his *pro rata* share, etc.   Pursuant to this agreement, there was a sale of deceased's personal property, on the first Tuesday in March, 1865, when his stock, carriage, wagons, etc., were sold.   Who conducted the sale, or who received the money, did not appear.   Nor did it appear whether the arbitrators made any award, nor *whether any part of the proceeds of the sale* was paid to the widow.

In June, 1866, T. M. Swanson obtained letters of administration on the estate.   The inventory of the household goods, etc., of deceased, footed up $814 50, and the following lands: sixteen hundred and eighty-one acres in Jasper county, appraised at $6,724 00; one thousand and sixty-five acres of wild lands, at $1,000 00; house and lot in Monticello, at $1,800 00; two-thirds interest in the store-house, at $600 00; and a house and lot at the Indian Springs, at $400 00.

The inventory also contained various accounts made in March, 1865, in favor of the estate against the heirs and distributees, amounting to $13,842 00, for slaves, etc. (We suppose these are the purchases made by them at said sale, as there is no other evidence on the subject.) Over half of these purchases were by the widow.

Barron sued all these heirs and distributees, as executors *de son tort,* upon said note, and upon the trial shewed the foregoing facts. On the cross-examination, one of the witnesses stated the value and situation of the property of deceased, the circumstances of the family, etc., and gave it as his opinion that all the property of deceased, exclusive of the slaves and lands, was not sufficient for the support of his family for three months. This testimony came in over the objection of plaintiff's attorneys. The witnesses thought that $1,500 00 or $2,000 00 would have been necessary for the support of the widow for one year, and that it was necessary to sell the personalty to support the family. This was also objected to, but the objection was overruled.

After the argument, the plaintiff's attorney requested the Court to charge the jury: 1st. That if the defendants sold the personal property of deceased and purchased the same, it was a conversion, and the defendants were liable to the plaintiff for double the value of the property. 2d. That the fact that said defendants acknowledged their liability to the administrator, and returned the same to him, did not release them from liability as executors *de son tort.* 3d. That if the defendants sold said personal property, and applied none of the proceeds to the support of the widow, but converted the same to their own use, then they became liable for double the property so converted, and the plaintiff could recover that amount, if his claim was sufficiently large, etc.

The Judge gave in charge the second request; he gave the third with the words, " or other lawful uses," added immediately after " widow," and he modified the first request by charging, that to make a party executor in his own wrong in Georgia, he must, without authority of law, wrongfully intermeddle with, or convert to his own use, the personalty of a

Barron *vs.* Burney *et al.*

deceased individual whose estate has no legal representative, and that if said defendants, or any of them, had so done, he, or they, were liable to the plaintiff to double the value of the property so intermeddled with or converted, (not beyond plaintiff's claim,) and that if there was a common intent to do such wrong, all are so liable. But he instructed the jury, also, that the taking possession of the lands and slaves of a deceased person, by his heirs-at-law, did not make them executors in their own wrong; that until it appears that such property is necessary for the payment of debts, such possession by the heirs is neither unlawful nor wrongful; it is necessary that some one take charge of the estate till some legally appointed authority is ready to receive it. The heirs were the proper parties to do this, and their taking it, protecting and caring for it, does not make them executors in their own wrong; and if it were necessary to support the slaves or the beasts, to sell a part of the perishable property, it was lawful for them to do so.

As to the liability of the widow, he charged that she was entitled to dower in the lands of which her husband died seized and possessed, and of the dwelling-house and furniture therein, from the death of her husband until her dower is assigned, and that her use and occupation thereof, *ad interim*, was not unlawful nor wrongful, and did not make her or her co-defendants executors in their own wrong; that her claim of a year's support was *above all other liens* on the husband's estate, even if it exhausted the estate, and if she and her co-defendants, in good faith, appropriated a portion of such estate, not beyond what she was entitled to, in good faith, to such support, that fact would not make them or her executors in their own wrong.

The plaintiff being dissatisfied with the verdict, (what it was does not appear,) sued out his writ of error, and says that the Court erred in allowing said evidence to be introduced over his objections, in modifying the requests to charge as he did, and in each and every part of his charge as to what would render the defendants executors *de son tort.*

Barron *vs.* Burney *et al.*

GEO. T. BARTLETT and JAS. H. BLOUNT for plaintiff in error.

LOFTON & HUTCHINSON for defendants in error.

McCAY, J.

1. As between themselves, we see no objection to heirs-at-law, who are all *sui juris,* dispensing with administration and settling the estate by an agreement among themselves.

But as against creditors, if they do this, they are executors *de son tort,* and are liable as such. If they have converted the property they are responsible for it, under the law governing suits against executors *de son tort,* and they cannot escape this by turning over to the administrator, afterwards appointed, the notes they took from the purchasers. At common law, it was presumed that every person who assumed control over the effects of a deceased person had in his possession a will, and he was bound to account for all that went into his hands. In this *account* he was entitled to such credits as any executor would be. If he produced no will, he could set off no debt due himself, but any other proper payments were allowed, until he accounted for all proven to have gone into his hands.

Under the Code, section 2406, it is provided that one who, without authority of law, wrongfully intermeddles, or converts to his own use the personalty, shall be liable for double the value of the property so possessed or converted. Nor can he set off against this liability any debt due himself, or *any debt he may have voluntarily paid.*

2. The simple taking possession of this property by *the heirs,* and the use of a portion of it for the preservation of the remainder, or the application of it to the support of the widow and children for twelve months, by the heirs-at-law, would not, in our judgment, make them liable, under this section, to the penalties and burdens specified. But the proof here is, that they sold the property, converted it to their own use, and, as against the creditors, we hold them liable to the penalties of the statute.

They did not *wrongfully* intermeddle, so long as they merely preserved the property, or used it for the twelve months' support.

We agree with the Court below, that if they had simply used the property to supply the widow with her year's support, allowed her by law, and to take care and keep in good condition the negroes and stock, they would not be liable.

As they were the heirs-at-law, their interference was not tortious nor meddlesome, and if they did not convert the property otherwise than to preserve it, and to support the widow, they did not act wrongfully.

The right of the widow to her support for a year is not a debt of the intestate. In a strict sense, it is a provision, an incumbrance, higher than any debt, and if these heirs have supplied her, they may set that up.

3. But the evidence does not show they did this. *That*, it is true, was one of the terms of the agreement, but there is no evidence that this agreement was ever performed, except to sell the property.

We think, therefore, there ought to be a new trial in this case.