Cross, administrator, *vs.* Johnson *et al.*

Cross, administrator, *vs.* Johnson *et al.*        |82  67|
                                                     |86  547|

1. Realty vests in heirs immediately. Widow is co-heir with her chil-
   dren, unless she takes dower. Before an administrator is appointed,
   she may rent out the lands, if adult children do not object, and the
   administrator when appointed need not prevent her from collecting
   the rents, but may aid her in doing so, without incurring liability
   as administrator.
2. If assets with which the administrator is chargeable be applied to
   the year's support of widow and minor child, the administrator
   may take credit for the same, although no year's support has been
   formally set aside, the burden being upon him to show that the
   amount was necessary and not excessive.

November 21, 1888.

Realty.   Heirs.   Administrators.   Year's   support.
Before Judge Hines.   Emanuel superior court.   No-
vember term, 1887.

Mrs. Perneta Johnson, Rowan and J. L. Johnson, as
heirs and distributees of the estate of B. W. Johnson,
deceased, (the former being the widow and the other
two the children of said B. W.) cited Littleton Cross, as
administrator of said B. W., to a settlement.   The mat-
ter was appealed, by consent, from the court of ordinary
to the superior court.   On the trial, the following evi-
dence was introduced:

Plaintiffs showed that Mrs. Johnson, one of original
plaintiffs, had died.   About three-fourths of the land
belonging to intestate was divided among the three dis-
tributees.   The balance was sold by the administrator,
part to A. Phillips for $225.00, and part to said J. L.
Johnson for $174.00.   This amount last named J. L.
Johnson was still indebted to the administrator.   The
division mentioned took place after all the distributees
were of age.   Before this division the administrator had
rented the lands to one McMillen, for turpentine pur-

poses.    This rent was received by the administrator and, for the two years the land was rented, amounted to $477.00.    All that Rowan Johnson got of this was supplies to the amount of $49.00.    The administrator also sold $55.00 worth of timber from the land before it was divided.    Of this Rowan Johnson got nothing.    The widow and J. L. Johnson got goods from McMillen on the turpentine account, but how much was not remembered.    J. L. got nothing on account of the timber, and thinks his mother got nothing.    Neither Rowan nor J. L. Johnson agreed to the renting to McMillen or to the sale of the timber.    Rowan was over twenty-one years old when his father died, was married and living away from the lands.    J. L. Johnson was twenty years of age, and with his mother, lived on the land for two or three years after his father's death.    The father died in 1876, and Cross took charge of the estate in 1877. No year's support was ever set apart to the widow. She and J. L. lived on what was made on the farm. Neither Rowan nor J. L. consented for the turpentine rent or the timber to be appropriated for a year's support.    One Sherod got a judgment against the estate, which the widow paid.

The defendant showed that the land was all divided between the heirs, except the two parts mentioned.    He has an unpaid judgment against J. L. Johnson for the part he bought.    He became administrator in 1877, April 10th.    At that time the turpentine trees had already been sold to McMillen by the heirs, who were then all of age.    Defendant had nothing to do with it and received none of the money from it.    The heirs sold it and lived on it.    Defendant did not sell the timber and did not collect anything from it.    The heirs got it.    The widow never applied for nor received any year's support, but she was to live on the share of what

the timber brought in lieu thereof. Defendant gave a draft on McMillen to pay for some supplies for her. The judgment obtained by Sherod was settled by the widow by note, and this note was paid either by her or by defendant.

Defendant also showed by J. C. Johnson, a brother-in-law of the widow, that in the winter of 1876, before defendant was appointed administrator, the widow agreed to sell the timber for turpentine purposes to Mc-Millen. What she got for it he did not know, and cannot say positively that she did sell or rent it. It was boxed soon afterward. Defendant also introduced his judgment against J. L. Johnson for $190.29 principal, interest from March 12th, 1881, and $6.00 costs. Also two returns, in which, among other things, he is charged with the proceeds of the sale of the two parcels of land, but not with the turpentine rent or the timber. These returns show a balance due him of $19.77 on November 7th, 1887.

The jury found for Rowan Johnson $346$\frac{17}{100}$, and for J. L. Johnson $155$\frac{88}{100}$. The trial occurred on November 12th, 1887. Defendant moved for a new trial on the following grounds:

(1–3) Verdict contrary to law and evidence.

(4) Error in not charging that the administrator could allow the widow to take and use all or part of intestate's property for a year's support without first obtaining an order or having the same set apart as a year's support as provided by law.

(5) Not charging, as requested, that under the law the realty of a deceased vested immediately in his heirs at law, and the personalty in the administrator for the purpose of paying debts and for distribution.

A new trial was granted as to J. L. Johnson and

refused as to Rowan Johnson, and defendant excepted.

WILLIAMS & BRANNEN, by brief, for plaintiff in error.

A. H. WOOTTEN and CAIN & POLHILL, contra.

BLECKLEY, Chief Justice.

A turpentine plantation is realty.   On the death of an owner intestate, his realty vests immediately in his heirs at law.   Code, §2483.   The court should so have charged the jury.   The widow is a co-heir with children unless she takes dower.   She may, without impropriety, rent out the realty in behalf of herself and the children, if they do not object, even if there be an administrator.   Certainly she may do it when there is none.   In this case, the evidence indicates that the widow did not take dower, but a child's part, in her deceased husband's realty ; that she rented the trees for turpentine purposes before the administrator was appointed ; and that at that time her son, Rowan Johnson, was of full age.   As an heir of his father, he was one of the owners of the trees. His mother (as the evidence indicates) rented out his interest in them, together with her own and that of a younger son not then arrived at majority.   The evidence indicates that she collected the rents and used them for her own support and that of her minor son.   The administrator (as the evidence indicates), neither before nor after his qualification, collected any portion of these rents.   Rowan Johnson now seeks to charge him with his part of the same.   We think it was less the duty of the administrator to look after Rowan Johnson's interest in these rents than it was of Rowan Johnson himself.   If his mother collected them, and he did not wish her to appropriate them as she did, why did he not in-

terpose to prevent it? What is to distinguish the case, as to him, from the ordinary case of one tenant in common receiving more than a due share of the rents, issues and profits of the common estate? It seems the administrator assumed and exercised some authority over the rents, but without, as can fairly be concluded, collecting any of them. He aided the widow in taking the benefit of them, but for that is he responsible as administrator? If the widow, before his appointment, made the rent contract, the rents by that contract were payable to her; she was the landlady, and the administrator could rightfully allow the tenant to account to her, and favor such accounting.

2. More especially could he do so, if they were needed for the support of the widow and minor son during the first year after the intestate's death. Were he chargeable with these rents in full, as property of the estate, he could now take due credit for so much of the same as went towards the year's support of the widow and the minor, provided the amount did not exceed a reasonable and proper allowance for that object. That there was no regular and formal allowance of a year's support and its assessment by appraisers, would make no difference except to cast on him the burden of proving that the amount was necessary and not excessive. *Simmons vs. Byrd*, 49 *Ga.* 286; *Barron vs. Burney*, 38 *Ga.* 264.

The verdict holding the administrator liable was in favor of both sons, so much in favor of each. The court granted a new trial as to one, but refused it as to the other, and this other was the man and not the minor at the time the property was rented out. We think the ends of justice require a new trial as to him also.

Judgment reversed.