## MILNER *et al. v.* VANDIVERE *et al.*

1. In a joint action by tenants in common for the recovery of land, where an equitable defence had been filed, it was error to charge the jury that if for any reason any of the plaintiffs could not recover, none of them could recover. Under the practice in this State, where an equitable defence is set up and prevails against the right of any of the plaintiffs to recover, the common law rule as to actions of ejectment, that all the plaintiffs shall recover or none, does not apply, but the same rule and measure of justice is to be applied as in proceedings in equity.

2. If the sale which purported to convey the legal title of the plaintiffs to the land in controversy was illegal, the legal title was still in them, and the law did not require them, before bringing their action, to tender the defendant the amount of the purchase money he had paid for the land. It was therefore error to charge the jury that if the mother of the plaintiffs sold the land to the defendant and used the money received therefor in the support of the plaintiffs or any of them, the plaintiffs could not recover unless they tendered back the amount of the purchase money prior to the bringing of the action, or unless he had realized it from rents over and above the value of the improvements.

3. The action was by some of the heirs at law of the deceased owner. The equitable plea of the defendant set up, among other things, that the land was sold at administrator's sale to raise money for a year's support set apart by the ordinary for the widow and the minor children; that the purchaser at the sale resold to the widow, who in turn sold to the defendant; that he was an innocent purchaser without notice of any defect or irregularity, and that the purchase money paid by him was used for the support and maintenance of the widow and the minor children. The plaintiffs contended that the year's support was not properly set apart and that the sale was illegal and unauthorized. *Held,* that if it should appear at the next trial that the year's support was properly set apart to the widow and minor children, and that the land was sold

to raise money for the year's support, and sold at a fair price, and the money was used by the widow and the minor children for their support and maintenance; or, whether the year's support was properly set apart or not, if the other facts stated should appear, and it should also appear that the amount thus paid by the defendant and used by the widow and minor children for their support and maintenance, was a fair and reasonable amount to be allowed them for a year's support, this would show an equity on the part of the defendant superior to the legal title of the plaintiffs. If it should appear, however, that the widow and only a part of the minor children used the money for their support and maintenance, the other minor children receiving no benefit therefrom, the legal title of the latter would be superior to the defendant's equity, and they might recover, although their co-plaintiffs could not.

4. The specification in the bill of exceptions of the parts of the record material to a clear understanding of the errors complained of, does not include any demurrer to the declaration. The clerk therefore had no authority for certifying any such document as a part of the record; and neither the demurrer nor any rulings of the court thereon, nor any exception thereto entered *pendente lite*, can be considered as authenticated so as to be properly before this court.

January 19, 1891. By two Justices.

Ejectment. Equity. Actions. Tenants in common. Title. Year's support. Practice. Before W. K. MOORE, Esq., judge *pro hac vice*. Bartow superior court. January term, 1890.

The equitable plea referred to in the opinion (which states all the other facts here material) alleged, in brief, as follows: James Milner, the husband of Mrs. Sue M. Milner, one of the plaintiffs, and the father of the other plaintiffs, died intestate in July, 1872, leaving his widow and the other plaintiffs and other children as his heirs at law, and an estate of real and personal property worth about $1,200 or $1,500. One of his sons, Oscar H. Milner, was appointed and qualified as his administrator, and took control of the estate; and in January, 1873, he obtained of the court of ordinary an order to sell all the lands belonging to the estate for the purpose of paying its debts. Soon afterwards he resigned and

abandoned the administration, and removed from the State without ever making any inventory and appraisement, leaving the estate unrepresented, and the widow and minor children destitute and with no means of support except the property belonging to the estate. On April 7, 1873, Mrs. Sue M. Milner applied for a year's support to be set apart to her and six minor children out of the estate; and in March, 1874, the return of the appraisers was made the judgment of the court of ordinary, setting apart the household and kitchen furniture and $1,383.53 in money to be paid by the administratrix of James Milner. On May 5, 1873, Mrs. Sue M. Milner was appointed and qualified as administratrix of the estate, and filed an inventory and appraisemant of all the property belonging thereto. She took charge of the estate, and in pursuance of an order of the ordinary, and after legal advertisement, she sold all the lands of the estate, including the land in controversy, at public outcry for $825, Thomas W. Milner being the purchaser; and to him she made her deed to said lands. He afterwards sold them to her, and she took charge of them as her own. On December 17, 1873, and on January 14 and July 24, 1874, she sold to the defendant, for $270, four of the lots of land in dispute, they being vacant, uninclosed and unimproved. She sold another of the lots, vacant, uninclosed and unimproved, to one Feemster, who, in consideration of $25, sold the same to the defendant. The sums paid to her for these lots were their full market value; and the defendant bought them in good faith and went into possession without any knowledge of any irregularity or illegality, if any there was, in the mode by which she secured her title. Believing that the title to the property was good, he made permanent and valuable improvements thereon, consisting of a dwelling-house and fencing, etc., of the value of $1,000. The plaintiffs never paid any taxes on

the property after he bought, but he paid the State, county and city taxes, and has occupied the premises by himself and his family continuously until now; and all of the plaintiffs are insolvent. On July 6, 1874, Mrs. Sue M. Milner, as administratrix, filed her annual return which was approved and admitted to record, showing a disposition of the assets of the estate. The money arising from the sale of the lands in dispute was used by her for supplying herself and her minor children with the actual necessaries of life. Then follow the prayers, which need not be stated.

J. A. BAKER, R. J. McCAMY and W. I. HEYWARD, for plaintiffs.

J. B. CONYERS, for defendant.

SIMMONS, Justice.

This was an action of ejectment brought by W. H. Milner, Emma J. Mosley, John L. Milner, James L. Milner, E. B. Milner, T. P. Milner, Ernest Milner and Kitty C. Stocks, heirs at law of James Milner, deceased, against A. G. B. Vandivere, for the recovery of a certain tract of land described in the declaration. By an amendment the names of Mrs. Mosley and Mrs. Stocks were stricken from the declaration. The defendant filed the plea of not guilty, and also the further plea that he had been in the actual and continuous adverse possession of the premises under written evidence of title for more than seven years before the commencement of the suit, and that the plaintiffs' right of action was barred by the statute of prescription. He also filed an equitable plea setting up certain equities as a reason why the plaintiffs were not entitled to recover; which will be found in the report of the case. Both sides submitted evidence to the jury which it is unnecessary to detail here. Under the charge of the court the jury returned a verdict for the defendant. The plaintiffs moved for a new trial on the several grounds set out

therein, which was overruled by the court, and they excepted.

1. The following instructions of the court to the jury were complained of in the 4th and 5th grounds of the motion for a new trial: (4) "If you believe from the testimony that Mrs. Sue M. Milner, the mother of the plaintiffs, sold this land to the defendants or either of them, and used the money received for the land in the support and maintenance of the plaintiffs or any of them, then I charge you that the plaintiffs cannot recover, unless you find from the evidence that they tendered back to the defendants the amount of this purchase money prior to bringing this action; or unless you should find that the rents and mesne profits arising from the property sued for would amount to the improvements placed on the premises by the defendants or those under whom they held, and also enough over and above the improvements to pay back the original purchase money, prior to the beginning of this suit." (5) "The court charges you further that the demise in this declaration is a joint demise, and if for any reason any of the plaintiffs cannot recover, none of them can recover. And if you find, for instance, that any of them are barred, you should find by your verdict who are barred, and name them."

Under the facts of the case we think the court erred in giving the above in charge to the jury. It will be seen that the jury were instructed that if the mother of the plaintiffs sold the land to the defendants or either of them, and used the money received from the land in the support and maintenance of the plaintiffs or any of them, the plaintiffs could not recover; also, that if for any reason any of the plaintiffs could not recover, none of them could recover. It is true this court has held in several cases that where tenants in common bring a joint action for the recovery of land, and it is

shown at the trial that either of them has no title or right of entry and possession, the action fails, although the others may have the title and the right of entry and possession. *De Vaughn* v. *McLeroy*, 82 *Ga.* 713, and cases there cited. This is the law of our State where the action is purely legal; and it will be seen by reference to the cases cited that they were all legal actions, and in none of them was an equitable defence filed. But we think that where plaintiffs bring a joint action of ejectment, and the defendant does not rely merely upon a legal right to defeat the action, but sets up an equitable right against the right of any or all of the plaintiffs to recover, the rule does not apply, and the action does not fail unless the equitable defence prevails against all the plaintiffs. If the defendant shows an equity superior to the legal title of all the plaintiffs, none of them can recover; if he shows an equity superior only to the legal title of some of the plaintiffs, and not to that of the others, the former cannot recover, while the latter can. In other words, if A, B and C, being tenants in common, bring a joint action against D, for the recovery of land, and D shows a superior equity to the legal title of B and C, and not to that of A, A can recover and B and C cannot. This rule naturally and of necessity arises from the blending of legal and equitable jurisdictions. Under the old practice, in an action of ejectment at law, a recovery could only be had upon the legal title to land. The holder of an equitable title could neither support the action nor set up his equitable title as a basis of affirmative relief, or to defeat a recovery based upon the legal title. The rights of the holder of the equitable title could only be asserted and established in equity. Injunctions were frequently granted to restrain ejectment by the holder of the legal title during the pendency of the proceedings in equity upon the equitable title. The defend-

v 86-85

ant may now, under our practice, interpose equitable as
well as legal titles or defences; and when equitable de-
fences are set up against legal titles, the same rule and
measure of justice is. to be applied as if the proceeding
was in equity. Sedgwick and Wait on Trial of Title
to Land, §485. Under the old practice, if the defend-
ant's equity was superior to the legal title of either or
any of the plaintiffs, the court would enjoin those plain-
tiffs from prosecuting their action at. law against the
defendant, but would refuse to enjoin those whose legal
title was superior to the defendant's equity. And there-
fore, as the defendant, under our practice, can set up
his equity by an equitable plea to an action at law, we
think that where he files such plea, the common law
rule that all shall recover or none does not prevail.
Indeed it has been so held by this court. In the case
of *Rumph* v. *Truelove*, 66 *Ga.* 480, it is said: "Whatso-
ever might be held to be the rule as to a joint demise,
where the general issue only is pleaded, it is unneces-
sary in this case to decide, as under our liberal practice,
equitable pleas involving other matters than title may
be introduced and adjudicated. This very right neces-
sarily abrogates any such common law rule." See also
Pomeroy on Remedies and Remedial Rights, §§209-215;
Allen *v.* Logan, 10 S. W. (Mo.) 149–151.

2. We think the court also erred in charging the
jury that it was necessary for the plaintiffs in this case
to tender the purchase money to the defendant before
bringing their suit, unless he had realized it from rents
over and above the value of the improvements. If the
land had been illegally sold, the legal title was still in
the plaintiffs, and we know of no law that requires the
plaintiff under such circumstances to tender to a de-
fendant who is in wrongful possession the purchase
money which he has paid for the land, even though he
pays it in good faith believing he is getting a good

title. If the legal title is in the 'plaintiffs, they are entitled to recover the land unless the defendant shows a superior equity to that title; and they are not required to tender the defendant the purchase money he has paid before they can bring suit to recover the land.

3. If on the next trial of the case the defendant can show that the year's support was properly set aside to the widow and minor children, and the land was sold to raise the money for the year's support, and was sold at a .fair price, and that the money was used by the widow and the minor children for their support and maintenance, then in our opinion this would show an equity on the part of the defendant superior to the legal title of the plaintiffs. If it should appear, however, that the widow and only a part of the minor children used the money for their support and maintenance, and others of the minor children received no benefit therefrom, then the legal title of the latter would be superior to the defendant's equity, and they might recover, while their co-plaintiffs could not. Or if on the next trial the defendant can show that the land was sold for a fair price, and the proceeds of the sale used by the widow and the minor children, and the amount thus used by them was a reasonable amount to be allowed them for a year's support, then in our opinion the defendant's equity would be superior to the plaintiffs' legal title, whether the year's support had been properly set aside or not. *Simmons* v. *Byrd*, 49 *Ga.* 286; *Barron* v. *Burney*, 38 *Ga.* 264; *Cross* v. *Johnson*, 82 *Ga.* 67.

4. The parts of the record specified in the bill of exceptions as material to a clear understanding of the errors complained of are, (1) original declaration with all the amendments thereto; (2) the equitable pleas of the defendants filed in the clerk's office on the 4th day of February, 1890; (3) the motion for a new trial and

the amendment and all the orders of court with reference thereto, rule *nisi*, etc.; (4) the entire brief of evidence filed and approved. It will be seen that this specification does not include any demurrer to the declaration. The clerk, therefore, had no authority for certifying any such document as a part of the record. Consequently, neither the demurrer nor any rulings of the court thereon, nor any exception thereto entered *pendente lite*, can be considered as authenticated so as to be properly before this court. It follows that the assignment of errors by the defendant in error on rulings said to have been made *pendente lite* have nothing to rest upon and cannot be considered. Had the defendant in error desired any part of the record brought here which was not specified in the plaintiffs' bill of exceptions, the act of 1889 (Acts of 1889, p. 114) pointed out to him the mode of accomplishing his purpose. That mode not having been pursued, this court must simply ignore so much of the transcript as the clerk below has sent here without any authority.

*Judgment reversed.*